UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

M. L.,

                          Plaintiff,

        v.

CRAIGSLIST INC, et al.,

                          Defendants.

Case No. C19-6153 BHS-TLF

REPORT AND
RECOMMENDATION

Noted for May 1, 2020

This matter comes before the Court on defendant craigslist, Inc.'s ("craigslist") motion to dismiss (Dkt. 37) and defendant Wyndham Hotels & Resorts, Inc.'s, ("Wyndham") motion to dismiss (Dkt. 38).

For the reasons set forth below, the Court should DENY IN PART and GRANT IN PART craigslist's motion (Dkt. 37). The undersigned also recommends that the Court DENY Wyndham's motion (Dkt. 38).

The plaintiff brings this lawsuit for damages under a federal statute that prohibits slavery and sexual trafficking of children -- or by force, fraud or coercion; she also alleges state law causes of action. As to the federal statutory claim, plaintiff seeks relief under 18 U.S.C. 1595(a), which states that any individual who is a victim of a crime set forth under 18 U.S.C. § 1581 et seq.:

> may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an action in violation of this chapter [18 USCS §§ 1581 et seq.]) in an

REPORT AND RECOMMENDATION - 1

appropriate court of the United States and may recover damages and reasonable attorney fees.

According to 18 U.S.C. § 1591:

(a) Whoever knowingly –

    (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

. . .

(e) in this section:

        (3) The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.
        (4) The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).
        . . .
        (6) The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

<u>Factual Background</u>

Plaintiff brings this action alleging that she was the victim of sex trafficking. Dkt. 1-2. Plaintiff alleges that craigslist and Wyndham are liable because her traffickers advertised her on the craigslist website and held her at a hotel owned by Wyndham. *Id.*

1

A.  Craigslist

2       The complaint alleges that beginning when she was 12 years old, adult sex

3  traffickers would use the craigslist website to post advertisements and photographs of

4  plaintiff to solicit commercial sex purchasers. Dkt. 1-2 at ¶¶ 37-38. Plaintiff contends that

5  the traffickers would create the advertisements in accordance with craigslist's "terms of

6  use" and used the craigslist guidelines to create, develop and format the

7  advertisements. *Id.* at ¶¶ 38-39. The complaint states that after creating the

8  advertisements, the traffickers would pay craigslist a fee to post the advertisement on

9  the "erotic services" section of the craigslist website. *Id.* at ¶ 40.

10      Plaintiff alleges that traffickers and purchasers knew that craigslist allowed them

11  to advertise and purchase sex trafficking victims. *Id.* at ¶ 41. Plaintiff further contends

12  that craigslist facilitated and assisted anonymous communications between sex

13  purchasers and human traffickers. *Id.* at ¶ 42. Plaintiff alleges that craigslist's

14  anonymous communications systems allowed the perpetrators to hide their crimes from

15  law enforcement agencies. *Id.* at ¶ 43. The complaint also states that craigslist was

16  aware that their website hosted, facilitated, and aided the trafficking of minors. *Id.* at ¶

17  44. The complaint states that craigslist benefited from the commercial sex

18  advertisements on their website because the traffickers paid a fee to craigslist for every

19  posted advertisement and the advertisements attracted large numbers of users to their

20  website. *Id.* at ¶ 45-47.

21      Plaintiff alleges that while craigslist did not allow posts directly suggesting sexual

22  favors for money, it allowed posts with coded language known to advertise sexual

23  services. *Id.* at ¶¶ 50-51. The complaint also states that these coded advertisements

24

25

were posted with a photograph of a female figure in lingerie or a cropped or blurred photo of a nude female figure. Dkt. 1-2 at ¶¶ 52. The complaint contends that craigslist knew that human traffickers were using the features and guidelines of the craigslist website to advertise trafficked minors in a manner that would evade detection by law enforcement. *Id.* at ¶¶ 52-61. Plaintiff also alleges that craigslist took no meaningful action to enforce its own terms of use or otherwise stop people from using the website to traffic minors. *Id.* at ¶ 62.

Plaintiff asserts that despite numerous lawsuits, government actions, public outcry, and other sources informing them about how their website was used for purposes of human trafficking, craigslist did not remove the erotic services section for over 10 years. *Id.* at ¶ 65. Plaintiff contends that craigslist developed content requirements to instruct traffickers on how to evade detection and to maintain the benefit of this illegal conduct. *Id.* at ¶ 65. Plaintiff alleges that in 2009 craigslist renamed the "erotic services" section to "adult services." *Id.* at ¶ 66. Plaintiff maintains that in 2010 craigslist terminated the adult services section but continued to allow posts promoting human trafficking in other sections of the website. *Id.* Plaintiff states that craigslist eventually shut down the personal ads section of their website. *Id.* at ¶ 67.

Next, plaintiff alleges that traffickers used craigslist services to advertise plaintiff and paid craigslist a fee to post these advertisements. Dkt. 1-2 at ¶¶ 69, 71. The complaint alleges that the traffickers posted photos of plaintiff showing that she was a minor and craigslist allowed the advertisements without verifying her age or ensuring that she was not the victim of human trafficking. *Id.* at ¶¶ 69-70. Plaintiff also claims that there was a relationship between craigslist and the traffickers by which they contracted

and conspired to advertise plaintiff for commercial sex and evade law enforcement. Dkt. 69-71, 75.

B. Wyndham

Plaintiff alleges that Wyndham owns, operates, and controls the Howard Johnson Inn brand, including the property located at 1233 Central Avenue North, Kent WA 98032. Dkt. 1-2 at ¶ 22, 116b, 121. Plaintiff further alleges that Wyndham controls the training and policies for the Howard Johnson brand hotel in Kent, Washington. *Id.* at ¶ 22b. Next, plaintiff alleges that Wyndham receives a percentage of the gross room revenue from the money generated by the Howard Johnson hotel in Kent and receives a percentage of the revenue generated from the rate charged to the hotel guest at the same hotel. *Id.* at ¶¶ 22b-c.

Plaintiff alleges that in 2011, after a federal investigation and pressure from the public, Wyndham made a commitment to train its staff to recognize and report human trafficking. But, by 2014 Wyndham had trained some, but not all, of its employees. *Id.* at ¶¶ 106-07. Plaintiff alleges that Wyndham knew that human trafficking was occurring at Howard Johnson Inn branded hotels yet failed to take adequate steps to train staff to prevent and report trafficking at their locations. *Id.* at ¶ 118.

The complaint states that human traffickers transported plaintiff to the Howard Johnson Inn in Kent which was owned by Wyndham. Dkt. 1-2 at 121a. Plaintiff asserts that she was assaulted, advertised, sold, and held against her will at this location. *Id.* The complaint alleges that Wyndham managed this Howard Johnson Inn, controlled the booking policies, rates, and managed operations at that location. *Id.* at ¶ 121b. And

plaintiff alleges that Wyndham and defendant 2005 Investors shared the financial benefits gained from renting the rooms to plaintiff's traffickers. *Id.*

The complaint alleges that Wyndham had actual and constructive knowledge that sex trafficking was occurring on its properties, yet "allowed, authorized, permitted, induced, or encouraged the trafficking of individuals, including [plaintiff]." *Id.* at 121 d-f. The complaint states that Wyndham knew or should have known that plaintiff was being trafficked at this Howard Johnson, because of the hotel's location – in an area of Kent that was known for a high incidence of crime and that was known as being prone to sex trafficking activity. *Id.* at 121g.

Plaintiff contends that Wyndham exercised control over Howard Johnson branded hotels and was in an agency relationship with the Howard Johnson branded hotels. *Id.* at 121i-k. Plaintiff also contends that Wyndham breached its duties by failing to provide employees with the training and resources necessary to combat human trafficking at Howard Johnson hotels. *Id.* at 121l.

Next, the complaint explains that traffickers held plaintiff at this Howard Johnson for over one year from 2007 to 2008 when plaintiff was 16 and 17 years old. *Id* at ¶ 149. The complaint states the traffickers advertised plaintiff for commercial sex at the Howard Johnson in Kent and would pay Wyndham and 2005 Investors LLC to rent the rooms. Dkt. 1-2 at ¶ 152. The complaint contends that the purchasers would arrive at the Howard Johnson location, and could be seen waiting in the parking lots, common areas and hallways of the hotel. *Id.* at ¶¶ 156-57.

The complaint also alleges that the hotel staff was aware this was occurring because of the large number of men waiting to enter the room, the large number of

condoms, and condom wrappers in garbage cans, unusual amounts of bodily fluids on

linens and towels, bottles of lubricant and lotions as well as pornographic magazines.

*Id.* at 157-58. Next, the complaint alleges that hotel staff spoke with plaintiff on more

than one occasion to warn her to keep her activities more discrete or they would have to

kick her out of the hotel. *Id.* at ¶ 159. Plaintiff also contends that "[p]olice contacted and

spoke with motel staff regarding the minor Plaintiff." *Id.* at ¶ 161. Finally, the complaint

alleges that Wyndham had been made aware that human trafficking was occurring at

their hotels because they had received complaints and reports from the concerned

members of the public and law enforcement agencies. *Id.* at ¶ 173.

<u>Discussion</u>

Both Wyndham and craigslist have brought these motions under Federal Rule of

Civil Procedure ("FRCP") 12(b)(6). When reviewing a FRCP 12(b)(6) motion, the Court

must accept as true "all well-pleaded allegations of fact in the complaint and construe

them in the light most favorable to the non-moving party." *Cedar Point Nursery v.*

*Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (internal quotations omitted). The court is

not required to accept legal conclusions couched as factual allegations. *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to

"state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if

the pleaded facts allow the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678. When evaluating an FRCP

12(b)(6) motion, the court may only consider the complaint, materials incorporated into

1  the complaint by reference, and matters of which the court may take judicial notice.

2  *Cedar Point Nursery*, 923 F.3d at 530; *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d

3  988, 998-99, 1002-03 (9th Cir. 2018). The Court does not resolve factual disputes at the

4  pleading stage. *Khoja,* at 1003.

5  　　A.  Defendant Wyndham's Motion

6  　　Wyndham argues that the amended complaint should be dismissed because (1)

7  the amended complaint impermissibly relies on shotgun pleading and (2) the amended

8  complaint fails to state a claim under the TVPRA. Dkt. 38.  Plaintiff filed a response in

9  opposition to the motion (Dkt. 47) and defendant filed a reply (Dkt. 53). For the reasons

10  set forth below, the Court should DENY Wyndham's motion (Dkt. 38).

11  　　1.  Shotgun Pleading

12  　　Pursuant to FRCP 8(a)(2), a pleading that states a claim for relief must contain a

13  "short and plain statement of the claims showing that the pleader is entitled to relief."

14  While the pleading standard under FRCP 8 "does not require 'detailed factual

15  allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me

16  accusations." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The pleading must contain

17  more than "labels and conclusions" or "'naked assertion[s]' devoid of "further factual

18  enhancements." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

19  　　A pleading may constitute an impermissible "shotgun pleading," if it fails to

20  connect its factual allegations to the elements comprising plaintiff's claims in a manner

21  that denies the parties adequate notice of the allegations supporting each cause of

22  action. *Lackey v. Ray Klein, Inc.*, No. C19-590-RSM, 2019 WL 3716454 at *17 (W.D.

Wash. Aug. 7, 2019); *Hoffman v. Transworld Sys.*, No. C18-1132-JCC, 2018 WL 5734641 at *9-10 (W.D. Wash. Nov. 2, 2018).

Wyndham argues that the amended complaint impermissibly relies on shotgun pleadings, because 1) each alleged count incorporates all preceding and succeeding paragraphs, 2) portions of the amended complaint make allegations against all defendants collectively, and 3) the amended complaint does not specify which counts are asserted against which defendants. Dkt. 38.

First, while each count includes a statement incorporating preceding and succeeding paragraphs, each count does not rely solely on this statement. Instead, each count in the amended complaint includes allegations of fact and many include citations to the relevant statutory authority. Dkt. 1-2 at ¶¶ 189-227. Additionally, while the amended complaint makes allegations against the defendants collectively, the complaint also makes specific allegations against the individual defendants. The amended complaint does not appear intended to cause confusion or deny notice of the claims to the defendants. The complaint provides sufficient factual allegations to give Wyndham adequate notice of the allegations against it. Accordingly, the undersigned recommends that the Court find that the amended complaint does not constitute an impermissible shotgun pleading.

2. Trafficking Victims Protection Reauthorization Act ("TVPRA")

Next, Wyndham argues that the amended complaint fails to allege sufficient facts to state a claim under 18 U.S.C. § 1595.

18 U.S.C. 1595(a) states that a person who is the victim of sex trafficking under 18 USCS §§ 1581 et seq.:

> may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an action in violation of this chapter [18 USCS §§ 1581 et seq.]) in an appropriate court of the United States and may recover damages and reasonable attorney fees.

Congress enacted Section 1595 in 2003 to provide a private right of civil action for victims of human trafficking. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011). The 2003 law did not permit recovery against individuals who financially benefit from participation in the trafficking venture; this cause of action was added in the 2008 amendment. *Id.* at 1094 n.1. Because the statute does not contain a clear intent to apply retroactively, the "financial benefit" cause of action may only apply to conduct occurring on or after December 23, 2008 – the 2008 amendment's effective date. *Owino v. CoreCivic, Inc.*, No. 17-cv-1112-JLS, 2018 WL 2193644 (S.D. Cal. May 14, 2018) (citing *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994)).

In order to allege beneficiary liability under the TVPRA a plaintiff must allege that the defendant (1) knowingly benefited, financially or by receiving anything of value, (2) from participating in a venture, (3) which the defendant knew or should have known has engaged in a violation of 18 U.S.C. § 1591. 18 U.S.C. § 1595. Section 1595 permits civil action for damages under Section 1591; the meaning is plain and unambiguous, and both statutes contain expansive language that courts should interpret broadly. *Nobel v. Weinstein*, 335 F. Supp. 3d 504, 515-17 (S.D.N.Y. 2018) (citing *Peyton v. Rowe*, 391 U.S. 54, 65 (1968)).

Some Courts have held a complaint that alleges facts that defendant received payment for the use of a hotel room, which the defendant knew was used for human trafficking and commercial sex acts, sufficiently alleges that a "benefit" was received, and therefore states a TVPRA claim. *Ricchio v. McLean*, 853 F.3d 553, 556-57 (1st Cir. 2017); *see*, *S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-cv-1194, 2020 WL 1244192 at * 5 (S.D. Ohio March 16, 2020), *H.H. v. G6 Hosp., LLC*, No. 2:19-cv-755, 2019 WL 6682152 at *6 (S.D. Ohio Dec. 6, 2019), *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849, 2019 WL 4929297at * 3 (S.D. Ohio Oct. 7, 2019).

In the context of a motion to dismiss, allegations that the defendants were aware of the crimes being committed, tacitly approved of the conduct by not exposing the crimes and benefiting from payment from the venture, create a reasonable inference that defendants participated in the venture. *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019), *Ricchio*, 853 F.3d at 555-58.

The instant case may be compared with the situation presented in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). In *Ricchio,* the victim of an attempted human trafficking and forced prostitution venture was held captive, drugged, beaten and raped at the Shangri-La Motel in Massachusetts. *Id.* at 555. The victim brought suit against Bijal, Inc., the owner of the motel, and the Patels, the operators of the motel. *Id.* Plaintiff brought claims under Section 1595(a) against all three defendants; the district court granted the defendants' motion to dismiss pursuant to FRCP 12(b)(6), and the First Circuit reversed. *Id.*

The plaintiff's complaint alleged that an operator of the hotel, Mr. Patel, actively participated in the venture and that Ms. Patel *implicitly* participated by ignoring plaintiff's

1   physical deterioration and acts of violence against the plaintiff. *Id.* Justice Souter (ret.),

2   (by designation), reasoned that, "these allegations and inferences suffice as plausible

3   support for pleading statutory violations by the Patel defendants in their own right and

4   as agents for renting out Bijal's motel space, and by Bijal in consequence of the Patel's

5   agency." *Id.* at 556. Further, Justice Souter reasoned that Bijal and the Patels benefited

6   from the venture by renting space which the perpetrator obtained to force sexual labor.

7   *Id.* at 556-57. Justice Souter interpreted the complaint to mean that the defendants

8   knowingly benefited because they knew of or at least recklessly disregarded the

9   conduct occurring on the property. *Id.*

10  Plaintiff in the instant case alleges that Wyndham is liable for Section 1595

11  violations under a beneficiary liability theory. Dkt. 1-2 at ¶¶ 223-227, Dkt. 47 at 14-17.

12  Accordingly, plaintiff can only allege this cause of action for conduct that occurred on or

13  after the effective date of the 2008 amendments: December 23, 2008. Plaintiff alleges

14  that she was held at the Howard Johnson hotel in Kent from 2007 to 2008. Dkt. 149.

15  Therefore, plaintiff's Section 1595 beneficiary liability claims for conduct occurring

16  before December 23, 2008 should be dismissed, because the 2008 amendment

17  creating beneficiary liability does not apply retroactively. *See*, 18 U.S.C § 1595; *Owino*

18  *v. CoreCivic, Inc.*, No. 17-cv-1112-JLS, 2018 WL 2193644 (S.D. Cal. May 14, 2018)

19  (citing *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994)). However, plaintiff's

20  TVPRA claims should not be dismissed because it is plausible that some of the conduct

21  alleged in the complaint occurred on or after December 23, 2008.

22  Here, plaintiff alleges that Wyndham knowingly benefited from the sex-trafficking

23  venture by continuing to rent the rooms to plaintiff's traffickers and receiving the

24

25

revenue from the room rentals, despite being aware that plaintiff was a victim of human trafficking and a minor. The amended complaint alleges that Wyndham participated in the venture because Wyndham was aware that this was occurring and was aware of indications that plaintiff was being trafficked at their hotel yet continued to allow plaintiff to be held at the Howard Johnson in Kent for a year.

Additionally, plaintiff asserts that the staff, which allegedly worked for Wyndham, contacted plaintiff to ask her to be more discrete in her activities. Plaintiff further contends that police officers spoke with hotel staff regarding plaintiff being a minor. Finally, plaintiff alleges that Wyndham had both actual and constructive knowledge that plaintiff was a minor and the victim of human trafficking. Accordingly, the factual allegations pled in the amended complaint, accepted as true and construed in the light most favorable to plaintiff, plausibly state a claim against Wyndham for TVPRA liability. *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017).

Wyndham argues that plaintiff's complaint fails to state a claim against Wyndham because Wyndham is the ultimate parent company of the Howard Johnson franchisor and that 2005 Investors LLC actually operated the Howard Johnson location in Kent. *See*, Dkt. 38, 53. Wyndham argues that this indirect franchising relationship with 2005 Investors LLC is insufficient to establish a claim against Wyndham. Dkt. 38, 53. However, this matter is before the Court on a motion to dismiss -- therefore the plaintiff's allegations must be accepted as true. Plaintiff's complaint alleges that Wyndham actually owned, operated and controlled the Howard Johnson location in Kent. Dkt. 1-2 at ¶¶ 22, 116b, 121. The Court will not resolve factual disputes in the context of a FRCP 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998-99, 1002-03

1   (9th Cir. 2018). Accordingly, plaintiff has sufficiently plead a TVPRA claim against

2   Wyndham as the owner and operator of the Howard Johnson hotel in Kent.

3          Wyndham argues that the Court should apply the reasoning of the decisions in

4   *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019), and

5   *Kolbek v. Twenty First Cent. Holiness Tabernacle Church, Inc.*, No 10-cv-4121, 2013

6   WL 6816174 at * 16 (W.D. Ark. Dec. 24, 2013) -- that to state a Section 1595 claim

7   plaintiff must allege the defendants received benefits because of the alleged facilitation

8   of the sexual misconduct. Dkt. 38 at 5-6.

9          This Court should decline to apply the standard discussed in *Geiss* because the

10  plaintiffs in *Geiss* brought different statutory claims than the plaintiff in the current case.

11  In *Geiss*, the plaintiffs' alleged that defendant Harvey Weinstein was liable for violations

12  of 18 U.S.C. § 1591(a)(1). *Geiss*, 383 F. Supp. 3d at 168. Plaintiffs alleged that the

13  other named defendants were liable for violating 18 U.S.C. § 1591(a)(2) for participating

14  in the alleged sex-trafficking venture by facilitating and covering up the assaults as well

15  as benefiting from the venture. *Id.*

16         In *Geiss,* the court noted that, to commit a violation under Section 1591(a)(2), the

17  plaintiff must allege that the defendants received a benefit for affirmative conduct

18  furthering the sex-trafficking venture. *Id.* (citing to *Afyare*, 632 F.App'x at 286).

19         In *Kolbek*, five women who had been sexually abused by a church leader sued

20  the church leader, members of the church and church-run entities. *Kolbek*, 2013 WL

21  6816174 at *1-2. In relevant part, plaintiffs alleged the church leader was liable under

22  Section 1595 as a perpetrator in violation of Section 1591, and the remaining

23  defendants were liable under a beneficiary liability theory for participating in the church

24

25

leader's venture. *Id.* at *16. For plaintiffs to maintain a Section 1595 action against the defendants, they would first need to establish an underlying Section 1591 violation. *Id.* The plaintiffs would be required to demonstrate that they were forced to engage in a "commercial sex act," which is defined as "any sex act on account of which anything of value is given to or received by any person." *Id.* (quoting 18 U.S.C. § 1591).

The court stated that "[T]he use of the phrase 'on account of which' suggests that there … needs to be a causal relationship between the sex act and an exchange of an item of value." *Id.* (quoting *United States v. Marcus*, 487 F. Supp.2d 289, 306-307 (E.D.N.Y. 2007)). The court granted the defendants' motion for summary judgment, because plaintiffs had provided no evidence showing that the defendants' expenses were paid on account of the sexual misconduct and therefore as a matter of law, plaintiff failed to state a claim for a Section 1591 violation. *Id.* Because plaintiffs could not allege an underlying Section 1591 claim, the plaintiffs' Section 1595 claims also failed. *Id.*

In the present case, plaintiff alleges that she was the victim of human trafficking in violations of Section 1591. Dkt. 1-2 at ¶ 224. Wyndham does not challenge the plaintiff's contention that she was the victim of human trafficking or that this trafficking amounted to a violation of Section 1591. Unlike Section 1591, Section 1595 does not include the requirement that plaintiff show that defendants personally engaged in a commercial sex act. 18 U.S.C. 1595. Further, there is nothing in the statutory language of Section 1595 from which to interpret a requirement that benefits must be received *because* of an overt act in furtherance of the underlying crime or violation. *Id.* Accordingly, this Court should not adopt the reasoning of *Geiss* or *Kolbek*.

1    Next, Wyndham argues that the Court should apply the reasoning of the

2    decisions in *United States v. Ayfare*, 632 F. App'x 272, 286 (6th Cir. 2016) and *Noble v.*

3    *Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) for the proposition that plaintiff

4    must allege that defendants committed some overt act in furtherance of the sex-

5    trafficking venture. Dkt. 38 at 6-7.

6    In both *Ayfare* and *Noble*, the respective courts held that a defendant participates

7    in a sex-trafficking venture only if the defendant's conduct furthered the venture with

8    knowledge or reckless disregard of the fact that it was furthering the alleged venture.

9    *See, Ayfare*, 632 F. App'x at 286, *Noble* at 335 F.Supp. 3d at 524. In each of these

10   cases the court evaluated the phrase "participation in a venture" under the criminal

11   statute 18 U.S.C. § 1591, which contains a definition of this phrase. Section 1591(e)(4)

12   states that "In this section: […] [t]he term "participation in a venture" means knowingly

13   assisting, supporting, or facilitating a violation of subsection (a)(1)."

14   Although Section 1595—which is the basis of plaintiff's claims—uses the term

15   "participation in a venture" as well, Section 1595 does not define it. Additionally, Section

16   1591 specifically states that the definition of "participation in a venture" is meant to apply

17   to Section 1591, and nothing in Sections 1591 or 1595 impose that definition on Section

18   1595. *See* statutory language, *supra,* pp. 1-2 of this Report and Recommendation.

19   Further, a recent Tenth Circuit decision has held that tacitly approving of the misconduct

20   and enabling the conduct through inaction is sufficient to meet the plausibility standard

21   and state a claim under Section 1595. *Bistline v. Parker*, 918 F.3d 849, 876 (citing

22   *Ricchio*, 853 F.3d at 557).

23

24

25

1    For the reasons set forth above, the undersigned recommends that the Court

2  DENY Wyndham's motion to dismiss (Dkt. 38).

3    B.  Defendant craigslist's Motion

4    On February 3, 2020, craigslist filed a motion to dismiss plaintiff's complaint

5  pursuant to FRCP 12(b)(6). Dkt. 37. The motion argues that plaintiff's amended

6  complaint should be dismissed because, (1) plaintiff's state law claims are time barred

7  by the statute of limitations, (2) plaintiff's state law claims are barred by CDA section

8  230(c)(1), and (3) the amended complaint fails to sufficiently plead facts to state the

9  claims alleged against craigslist. *Id.* Plaintiff filed a response in opposition to the motion

10 (Dkt. 48) and craigslist filed a reply (Dkt. 54). For the reasons set forth below, the

11 undersigned recommends that the Court DENY IN PART and GRANT IN PART

12 craigslist's motion. Dkt. 57.

13    1.  Statute of Limitations

14    First, craigslist argues that plaintiff's state law claims should be dismiss as barred

15 by the applicable statute of limitations. Dkt. 37 at 11-13.

16    Federal Rule of Civil Procedure 8 does not require a plaintiff to plead around

17 affirmative defenses and ordinarily, affirmative defense may not be raised on a motion

18 to dismiss. *United States CFTC v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019)

19 (citing *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018)). Although

20 statute of limitations is an affirmative defense, a defendant may argue the defense in a

21 FRCP 12(b)(6) motion, if the running of the limitations period is apparent on the face of

22 the complaint. *See, Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). And

23 the "district court may grant a 12(b)(6) motion to dismiss on statute of limitations

24

25

grounds only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

Pursuant to the Revised Code of Washington (RCW) § 4.16.340, state law claims arising from childhood sexual abuse must be commenced within the later of the following periods:

> (a) Within three years of the act alleged to have caused the injury or condition;
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act, or
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.

This statute of limitations is tolled until the child reaches the age of eighteen. R.C.W. § 4.16.340(1).

First, plaintiff's complaint alleges that she was between the ages of 16 and 17 from 2007 to 2008. Dkt. 1-2 at ¶ 149. The Court interprets this to mean that plaintiff would have reached the age of 18 on her birthday during 2009. Plaintiff alleges that she was "trafficked continually between the ages of 12 and 18 years of age, and beyond." *Id.* at ¶ 37. Plaintiff also provides five craigslist posts that prosecutors purportedly used "as evidence that the trafficker posted M.L. on Craigslist for commercial sex acts." *Id.* at ¶ 72. However, plaintiff does not assert a specific date or date range when the trafficking underlying this complaint ended or when the last post was made on craigslist. Additionally, plaintiff does not provide a specific date or date range when she discovered that her injuries and harm were caused by craigslist's alleged actions.

Accordingly, it is not clear from "the assertions of the complaint, read with the required liberality" that plaintiff's complaint is barred by the statute of limitations and that no tolling provision is applicable. Plaintiff is not required to plead around an affirmative defense. For this reason, at this stage of the litigation, the Court should find that plaintiff's state law claims are not barred by the statute of limitations.

However, because it has been more than nine years since plaintiff's 18th birthday, and some of the events alleged in the complaint occurred over ten years ago, some of plaintiff's claims might be barred by applicable statute of limitations. Accordingly, phased discovery and additional briefing would be appropriate to allow the Court to make an early assessment of whether any of plaintiff's claims are barred by the statute of limitation. Consideration of an early motion for summary judgement on this issue would be appropriate after phased discovery and briefing.

2.  47 U.S.C. § 230

Next, craigslist argues that plaintiff's state law claims should be dismissed because craigslist is immune from these claims under 47 U.S.C. § 230, the Communications Decency Act ("CDA"). Dkt. 37 at 14.

The CDA provides that "website operators are immune from liability for third-party information […] unless the website operator 'is responsible, in whole or in part, for the creation or development of [the] information.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019) (petition for certiorari docketed 1-6-2020, No. 19-849). Under the CDA, computer service providers are immune from state law claims seeking to hold the computer service provider liable for publishing third party content. *Id.* at 1097

1  (citing *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016)), *see also,*

2  *Backpages.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1272-73 (W.D. Wash. 2012).

3      a.  <u>Applicability to State Law Claims</u>

4      The Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA")

5  expressly states that the Communications Decency Act does not impair or limit civil

6  actions brought under 18 U.S.C. § 1595. *Id.*, 47 U.S.C. § 230. Yet the FOSTA contains

7  no language about whether it amends the CDA to preclude immunity for state law civil

8  actions. The Court should hold that, pursuant to the FOSTA amendments, computer

9  service providers may claim CDA immunity from state law claims, but not Section 1595

10  claims.

11      In 2018 Congress passed the Allow States and Victims to Fight Online Sex

12  Trafficking Act. 115 P.L. 164, 132 Stat. 1253. The FOSTA states that the

13  Communications Decency Act "was never intended to provide legal protection to

14  websites that facilitate prostitution and websites that facilitate traffickers in advertising

15  the sale of unlawful sex acts with sex trafficking victims." *Id.* § 2. The FOSTA also

16  amends the Communications Decency Act by adding:

17      (5) No effect on sex trafficking law. Nothing in this section (other than
18      subsection (c)(2)(A)) shall be construed to impair or limit—

19        (A) any claims in a civil action brought under section 1595 of title 18,
      United States Code, if the conduct underlying the claim constitutes
20        a violation of section 1591 of that title;

21        (B) any charge in a criminal prosecution brought under State law if the
      conduct underlying the charge would constitute a violation of 1591
22        of title 18, United States Code; or

23        (C) any charge in a criminal prosecution brought under State law if the
      conduct underlying the charge would constitute a violation of
24        section 2421A of title 18, United States Code, and promotion or

25

> facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

115 P.L. 164 at § 4.

When interpreting a statute, the Court begins "by analyzing, the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009)). Further, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act … it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Clay v. United States*, 537 U.S. 522, 528-29 (2003) (internal quotations omitted).

The Communications Decency Act expressly states that it does not provide immunity from federal criminal statutes. 47 U.S.C. § 230(e)(1). The CDA also expressly states that it has no effect on criminal prosecutions brought under state law if the underlying conduct would constitute a violation of 18 U.S.C. § 1591. 47 U.S.C. § 230(e)(5)(B)-(C). However, the Communications Decency Act only denies immunity to claims brought in a civil action under 18 U.S.C. § 1595. 47 U.S.C. § 230(e)(5)(A). If Congress intended to exclude immunity from civil cases brought under both state law and federal law equally, as it did with criminal prosecutions, it would have included such a provision in plain language. However, because Congress limited 47 U.S.C. § 230(e)(5)(A) to federal causes of action under 18 U.S.C. § 1595, the presumption is that Congress intentionally excluded state law claims from this provision.

b.  Craigslist's Immunity From State Law Claims

The Ninth Circuit uses a three-prong test for Communications Decency Act immunity. *Dyroff*, 934 F.3d at 1097. "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009)).

(1) Provider or User of Interactive Computer Service

The Communications Decency Act defines "interactive computer services" as any "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230 (f)(2). This term must be interpreted expansively under the CDA. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). The most common interactive computer service providers are websites. *Fair Hous. Council v. Roomates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008).

Here, as a website, craigslist is a provider of interactive computer services under the Communications Decency Act definition. Additionally, plaintiff does not contend that craigslist fails to qualify as a provider of interactive computer services; instead, plaintiff argues that craigslist is liable because they are responsible for the development or creation of the offending content. Dkt. 48 at 14-19.

1

        (2) <u>Publisher or Speaker</u>

2      A website can be both -- an interactive computer service provider and information

3 content provider -- if the website creates or develops the specific content at issue.

4 *Dyroff*, 934 F.3d at 1097, *Roomates.com*, 521 F.3d at 1162. If the website "passively

5 displays content that is created entirely by third parties, then it is only a service provider

6 with respect to that content." *Roomates.com*, 521 F.3d at 1162 (internal quotations

7 omitted).

8      The website would also be considered a website content provider regarding

9 content it creates itself, or content for which it is responsible (in whole or in part) for

10 creating or developing. *Id*.

11      Causes of action based on the defendant's hosting of third-party content are "a

12 clear illustration of a cause of action that treats a website proprietor as a publisher."

13 *Internet Brands*, 824 F.3d at 851. CDA Section 230 immunity would apply to this

14 conduct even if the website does not act to remove the content, because "removing

15 content is something publishers do and to permit liability for such conduct necessarily

16 involves treating the liable party as publisher of the content it failed to remove." *Id*.

17 (internal quotations omitted.)

18      The Ninth Circuit has also held that providing tools to facilitate the

19 communication and content of others, such as recommendations and notifications, is

20 the function of a publisher, not a content creator. *Dyroff*, 934 F.3d at 1098 (stating that

21 these tools and recommendations are "not content in and of themselves.").

22      However, if a website induces a third party to express, create or post illegal

23 content, the CDA does not provide immunity for the website's own conduct in inducing

24

25

the content. *Roomates.com*, 521 F.3d at 1165 (holding that requiring website subscribers to answer illegal questions as a condition of using the website unlawfully caused the offending content.) This is true even if the illegal content is ultimately created by a third party, because by inducing the creation of the content the website developed or created the content in part. *Id.* at 1166-67. Similarly, if the website uses third party content in an illegal manner or uses its systems to force users to create illegal content, the website can be held liable as a content provider. *Id.* at 1167.

The Ninth Circuit explained in *Roomates.com,* that "a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." 521 F.3d at 1168. But making a decision about whether to exclude materials -- that a third party seeks to post online -- is conduct for which a defendant would be immune from a lawsuit, under Section 230 of the CDA. *Id.* at 1170-1172 (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)) ("The claim against the website [in *Carafano*] was, in effect, that it failed to review each user-created profile to ensure that it wasn't defamatory. That is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230.")

Finally, in *Dyroff v. Ultimate Software Grp. Inc.*, the Ninth Circuit addressed a decision from the Washington State Supreme Court, *J.S. v. Village Voice Media Holdings, LLC*, 184 Wash. 2d 95 (2015) (en banc). *Dyroff*, 934 F.3d at 1099-1100. In *Dyroff* the plaintiff alleged that the defendant's website was not immune under the CDA because the website knew or should have known that users were selling drugs. *Id.* at 1099. The plaintiff further argued that defendant's website was liable because it

1  supported and protected the drug dealers through its anonymity policy. *Id.* at 1100. The

2  plaintiff's arguments relied on *J.S. v. Village Voice Media Holdings, LLC. Id.*

3  In *J.S.,* the Washington Supreme Court held that the plaintiff had sufficiently

4  alleged a cause of action that did not trigger Section 230 immunity, because the plaintiff

5  alleged that the defendant's content requirements were designed to promote the

6  prostitution of children.[1] *Id.* at 1100. The Ninth Circuit distinguished the *J.S.* case from

7  the *Dyroff* case, because the plaintiff in *Dyroff* alleged only that allowing anonymity on

8  the website promoted illegal drug transactions. *Id.*[2]

9  Plaintiff's complaint makes numerous allegations regarding craigslist's purported

10  involvement in developing and creating the advertisements that the traffickers used to

11  traffic and advertise plaintiff. First, plaintiff alleges that the traffickers used craigslist's

12  rules and guidelines to create the content and format of the advertisements. Dkt. 1-2 at

13  ¶¶ 38-39, 54, 58. Plaintiff claims that the traffickers would pay craigslist a fee to post the

14  advertisement on craigslist's "erotic services" section. *Id.* at ¶¶ 40-41. Plaintiff also

15  alleges that craigslist designed a communication system to allow traffickers and

16  purchasers to communicate anonymously and evade law enforcement. *Id.* at ¶¶ 42-43,

17  54, 58.

18  Plaintiff contends that craigslist developed user interfaces to make it easier for

19  purchasers to find desired trafficking victims, including plaintiff. *Id.* at ¶¶ 59-60. The

20

21

22  [1] Specifically, the plaintiff in J.S., alleged that the defendant website intentionally developed its website to require information that allows and encourages sex trafficking, developed content requirements that it knew would allow perpetrators to evade law enforcement, and that defendant had a substantial role in developing the content that could be placed on the website. 184 Wash. 2d at 102

23  [2] "Plaintiff here did not allege that Experience Project had a section for drug-related experiences on its website with specific content posting requirements that facilitated illegal drug transactions. Plaintiff's allegations that use anonymity equals promoting drug transactions is not plausible."

24

25

complaint alleges not only that craigslist was aware that this was occurring on it's website, but that there was a relationship by which craigslist facilitated the traffickers illegal conduct in exchange for payment. *Id.* at ¶¶ 69, 71, 74, 75.

Here, the amended complaint sufficiently alleges that craigslist materially contributed to the illegal content posted on the craigslist website. Plaintiff is not alleging that craigslist was a passive conduit of content created by others or that craigslist's neutral features and systems were abused by a third-party user to create illegal content. Instead, plaintiff is alleging that craigslist provided the guidelines to facilitate and promote the trafficker's illegal activity. Further, plaintiff alleges that there was a relationship between craigslist and the traffickers by which craigslist actively facilitated and induced the content underlying the plaintiff's cause of action.

Taking plaintiff's allegations as true and construing the assertions in the light most favorable to plaintiff, the amended complaint alleges sufficient facts to plausibly state a claim that craigslist was a content creator, not merely a publisher of third party created content. Therefore, as to plaintiff's allegations that craigslist actively participated in creating content and inducing others to create illegal content, craigslist is not entitled to CDA immunity from plaintiff's state law claims.

On the other hand, if any of plaintiff's state law claims are based on allegations that seek to hold craigslist liable solely for failing to remove third party content that is illegal, this conduct would fall within Section 230, and craigslist may have immunity for this alleged conduct as the functions of a publisher. Finally, simply allowing users to post anonymously without more is conduct for which craigslist would be immune under Section 230.

(3) <u>Information Provided by Another Information Content Provider</u>

Here, neither party disagrees that the content in question was created in part by a third party, the purported traffickers.

It is not clear, without further factual development, that craigslist is entitled to CDA immunity from all of plaintiff's state law claims. Accordingly, the Court should DENY craigslist's motion to dismiss all state law claims pursuant to Section 230.

3. <u>Failure to State a Claim</u>

Finally, craigslist contends that all of plaintiff's claims should be dismissed because the amended complaint fails to allege sufficient facts to state each claim.

a. <u>Negligence (Count 1)</u>

First, craigslist argues that plaintiff's amended complaint fails to allege a claim for negligence.

To state a cause of action for negligence in Washington, the plaintiff must show "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of injury." *City of Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141, 1160 (W.D. Wash. 2019) (quoting *Lowman v. Wilbur*, 178 Wn.2d 165, 176-77 (2013) (en banc). To be actionable, the defendant must owe a duty to the injured plaintiff, not the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988). Additionally, in Washington, "the violation of a statute or the breach of a statutory duty is not considered negligence *per se* but may be considered by the trier of fact only as evidence of negligence." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1151 (W.D. Wash. 2017) (citing RCW § 5.40.050).

The amended complaint alleges that "[d]efendants had a duty of care to operate their business in a manner that did not endanger minor children, including [p]laintiffs." Dkt. 1-2 at ¶ 190. Plaintiff realleges this assertion in her response to craigslist's motion to dismiss. Dkt. 48 at 20. In her response, plaintiff also argues, for the first time, that the TVPRA created a statutory duty requiring craigslist to take affirmative steps to monitor their website to prevent all sex trafficking activity on the website. Dkt. 21.

The existence of a legal duty is a question of law. *Cummins v. Lewis County,* 156 Wn.2d 844, 852 (2006). Duty may be predicated on common law principles or statutory provisions. *Degel v. Majestic Mobile Manor, Inc.,* 129 Wn.2d 43, 49 (1996). Under Washington law, "Negligence is the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances." Washington Pattern Jury Instruction 10.01; *see Washburn v. City of Federal Way,* 178 Wn.2d 732, 757 (2013). Although Washington law recognizes that in some situations a business owner may have a duty to protect business invitees from the criminal conduct of third parties, this law developed in the context of business activity on real property, not virtual website activity. *See generally, McKown v. Simon Property Group, Inc.,* 182 Wn.2d 752, 766 (2015).

First, plaintiff provides no factual basis or argument supporting her assertion that craigslist has a generally duty to ensure that their website is not endangering minors. Additionally, plaintiff cites no authority, and the undersigned is aware of none, supporting the proposition that craigslist has a general duty to ensure that their website

1   does not endanger minors. Accordingly, plaintiff's bald assertion that craigslist has

2   some duty to protect minors is insufficient to state a claim for negligence.

3          Next, plaintiff argues, in her responsive brief, that craigslist had a statutory duty,

4   pursuant to the TVPRA, to take affirmative action to ensure that they did not benefit

5   from sex trafficking on their website and to stop sex trafficking from occurring on their

6   website. Dkt. 48 at ¶ 21. Plaintiff does not cite to any portion of the statute which

7   purportedly creates this affirmative duty and cites to no authority supporting this

8   position. The TVPRA prohibits participation in sex trafficking. 18 U.S.C. § 1595(a). The

9   statute also prohibits knowingly benefiting from participating in a venture which the

10  person knows or should have known engaged in sex trafficking. *Id.* Nothing in the

11  statute indicates that a website or company must take the affirmative step to ensure that

12  third parties are not using their websites for sex trafficking.

13         Additionally, even if the TVPRA created some statutory duty to take affirmative

14  action to stop sex trafficking on a company's website, plaintiff's claim for negligence is

15  barred by the CDA. Plaintiff's complaint alleges that craigslist breached their duty

16  because they knew or should have known that traffickers were using their website and

17  took no steps to protect children. Dkt. 1-2 at ¶ 191. Plaintiff clarifies, in her response,

18  that she seeks to hold craigslist liable for negligence for failing to monitor their website

19  and for failing to take affirmative steps to prevent sex trafficking on their website. Dkt. 48

20  at 21. The Ninth Circuit has determined that failing to monitor third party content and

21  failing to remove third-party content when the website knows that it is illegal, is immune

22  under the CDA, because monitoring and removing content is the function of a publisher,

23

24

25

not a content creator. *Carafano*, 339 F.3d at 1119, *Roomates.com*, 521 F.3d at 1170-72, *Internet Brands*, 824 F.3d at 851.

Based on the foregoing, the undersigned recommends that the Court DISMISS plaintiff's negligence claim against craigslist with leave to amend.

### b.  Outrage (Count 2)

Next, craigslist argues that the amended complaint has failed to allege sufficient facts to state a claim for outrage. Dkt. 37 at 22. Craigslist contends that plaintiff has not and cannot allege extreme and outrageous conduct by craigslist.

To allege a cause of action for outrage plaintiff must allege facts showing "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Trujillo v. Nw. Servs., Inc.*, 183 Wn.2d 820, 835 (2015). The elements of a cause of action for outrage are generally questions of fact for the jury. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51 (2002).

However, the first element can only go to the jury after the court "determine[s] if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* The first element is met if the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Here, craigslist acknowledges that trafficking a minor for commercial sex has no place in civilized society, but argues that it's conduct consisted of providing a neutral platform for people to post and search content on the internet. See, Dkt. 37 at 22-23.

1   This argument is not persuasive; plaintiff's complaint does not allege that

2   craigslist conduct was limited to hosting a website. Plaintiff alleges that there was a

3   relationship between craigslist and the traffickers by which craigslist actively facilitated

4   and induced advertisements trafficking plaintiff. Dkt. 1-2 at ¶¶ 59-60, 69, 71, 74, 75.

5   Plaintiff alleges that this participation in human trafficking was extreme and outrageous

6   conduct on the part of plaintiff.

7   The undersigned recommends that the Court find that plaintiff's amended

8   complaint sufficiently alleges that craigslist conduct was extreme and outrageous.

9   Based on the foregoing, the plaintiff's count 2 should NOT BE DISMISSED.

10   c.   Criminal Profiteering (Counts 3, 8)

11   Defendant craigslist also argues that the amended complaint fails to allege

12   sufficient facts to state a claim for criminal profiteering under RCW 9A.82 et seq. Dkt. 37

13   at 23-24.

14   In order to allege a cause of action for criminal profiteering under RCW 9A.82 the

15   plaintiff must allege "an injury to a person, business or property by an act of criminal

16   profiteering, which requires a commission of specific enumerated felonies for financial

17   gain, that is part of a pattern of criminal profiteering (three or more acts within a five

18   year period that are similar or interrelated to the same enterprise) and damages."

19   *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1208 (W.D. Wash. 2013). The

20   enumerated felonies that can support a claim for criminal profiteering include the

21   "sexual exploitation of children as defined in RCW 9.68A.040, 9.68A.050, and

22   9.68A.060" and "promoting prostitution, as defined in RCW 9A.88.070 and 9A.88.080."

23   RCW § 9A.82.010(4)(x)-(y), RCW § 9A.82.100(1)(a).

24

25

An enterprise for the purposes of a criminal profiteering cause of action means "any individual, sole proprietorship, partnership, corporation, business trust, or other profit or nonprofit legal entity, and includes any union association, or group of individuals associated in fact although not a legal entity…" *Trujillo*, 183 Wn.2d at 839. A plaintiff alleges the existence of an enterprise by alleging that there is an ongoing organization, formal or informal, and that various associates function as a continuing unit. *Id.* at 840.

Here, craigslist argues that the amended complaint fails to state a claim for criminal profiteering because plaintiff purportedly fails to identify an enterprise or "present facts that craigslist was a knowing participant" in the enterprise. Dkt. 37 at 23-24. Yet, plaintiff's complaint alleges that the traffickers contracted and conspired with craigslist to promote the illegal advertisements selling plaintiff and evade law enforcement. Dkt. 1-2 at ¶ 59, 60, 69, 71. And, plaintiff alleges that craigslist received fees for each advertisement. *Id.* at ¶ 71. Plaintiff also alleges that the traffickers who were allegedly part of this relationship were prosecuted for trafficking plaintiff through craigslist for commercial prostitution. *Id.* at ¶ 72.

Reading plaintiff's allegations in the light most favorable to plaintiff, the Court should find that the amended complaint alleges sufficient facts to plausibly state a claim that craigslist knowingly participated in an enterprise under the criminal profiteering statute. Therefore, plaintiff's counts 3 and 8 should NOT BE DISMISSED.

1

        d.  <u>SECA (Count 4)</u>

2        Next, craigslist argues that the amended complaint fails to allege sufficient facts

3  to state a cause of action under the Sexual Exploitation of Children Act. Dkt. 37 at 24-

4  25.

5        Both parties assume, without analysis, that the Sexual Exploitation of Children

6  Act, a criminal statute, creates a separate civil private right of action. However, a private

7  right of action does not exist for all injuries caused by violations of a criminal code. *Cent.*

8  *Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 190 (1994) (noting that courts

9  have been "quite reluctant to infer a private right of action from criminal prohibition

10  alone."). The Washington courts have recognized that under certain circumstances "a

11  statute may create an implied private cause of action when the legislature did not

12  expressly provide an adequate remedy for violations of statutory rights." *Protect the*

13  *Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 210 (2013). However, the

14  Washington courts have held that there is no separate cause of action for childhood

15  sexual abuse arising from the Sexual Exploitation of Children Act. *See*, *Schorno v.*

16  *Kannada*, 167 Wn. App. 895, 900-01 (2012) (citing *C.J.C. v. Corp. of Catholic Bishop of*

17  *Yakima*, 138 Wn.2d 699, 709 (1999)).

18        RCW 9.68A.130 provides that a minor is entitled to recover an award of costs

19  and attorney fees if the minor prevails in a civil action arising from acts that would

20  constitute a violation of a specific provision of RCW 9.68A. *Furnstahl v. Barr*, 197

21  Wn.App. 168, 173 (2016). A jury must make the factual determinations about whether

22  acts occurred that would constitute a violation of a specific provision of the Sexual

23  Exploitation of Children Act. *Furnstahl,* at 176; *see also, Kuhn v. Schnall,* 155 Wn. App.

24

25

560, 565 (2010) (affirming a bifurcated jury deliberation where the tort claims were decided first, and then counsel gave closing argument on whether there had been a violation of RCW 9.68A.090, and the jury had separate deliberations on that issue, from which the RCW 9.68A.130 attorney fees and costs issue would be decided). While this provision authorizes the recovery of attorney fees and costs for civil actions based on conduct that would also violate the SECA, there is no indication that the legislature intended for this provision to create a separate private right of action to enforce a criminal statute. *See,* sexual exploitation of children as defined in RCW 9.68A.011, .040, .050, .060, .070, .075, .090..

Accordingly, the undersigned recommends that the Court interpret plaintiff's count 4 as a claim for attorney fees and costs; and that such a claim for attorney fees and costs would only become a jury question if plaintiff prevails on tort claims; and that if plaintiff does prevail on tort claims, plaintiff would be required to establish – by facts determined by a jury -- that the conduct underlying the tort claims in this civil action would also constitute a violation of RCW 9.68A. Because there is no legal basis under state law for a private right of action, the Court should dismiss any claim of independent tort liability with prejudice, because RCW 9.68A.130 does not raise a legally viable separate and distinct privately-enforced cause of action for damages under the Sexual Exploitation of Children Act.

e.  Ratification/Vicarious Liability (Count 5)

Plaintiff's amended complaint alleges an independent cause of action for vicarious liability because craigslist purportedly ratified the traffickers' conduct. Dkt. 1-2 at ¶¶ 208-211. Vicarious liability is a legal theory imposing liability "on an employer for

the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48 (1997). However, it is not an independent cause of action. *Banks v. Soc'y of St. Vincent De Paul*, 143 F. Supp. 3d 1097, 1104-05 (W.D. Wash. 2015). Accordingly, while plaintiff may argue that craigslist is vicariously liable for the torts of other actors, vicarious liability is not itself an independent cause of actions for which craigslist may be liable.

Based on the foregoing, and because plaintiff's count 5 cannot state a legitimate legal theory for relief, plaintiff's count 5 should be DISMISSED with prejudice.

### f.   Unjust Enrichment (Count 6)

Defendant craigslist contends that plaintiff's amended complaint fails to allege sufficient facts to state a cause of action for unjust enrichment.

"Unjust enrichment is an equitable theory that invokes an implied contract when the parties either have no express contract or have abrogated it." *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1266 (W.D. Wash. 2009) (internal quotations omitted) (citing *Young v. Young*, 164 Wn.2d 477, 484 (2008)). In order to state a cause of action for unjust enrichment, plaintiff must allege that (1) plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge or appreciation of the benefit, and (3) the defendant's retaining the benefits without the payment of its value is inequitable under the circumstances. *See, Young*, 164 Wn.2d at 484, *Austin v. Ettl*, 171 Wn. App. 82, 92 (2012). Additionally, the fact that a party profits at the expense of another is insufficient to trigger liability under unjust enrichment, rather, the enrichment must be unjust as between the two parties to a transaction. *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009).

Plaintiff's amended complaint alleges that craigslist unjustly profited at the expense of plaintiff because the traffickers paid craigslist a fee. Dkt. 1-2 at ¶ 213. The amended complaint does not allege that plaintiff entered into a transaction with craigslist, or conferred any benefit upon craigslist. The amended complaint alleges that craigslist unjustly benefited from allowing the traffickers to advertise plaintiff on their website. However, the fact that craigslist entered into a transaction with the traffickers who exploited plaintiff's life, and benefited at plaintiff's expense, is insufficient as a matter of law to allege a claim for unjust enrichment. Therefore, because plaintiff has failed to allege a transaction between plaintiff and craigslist, or that plaintiff conferred any benefit on defendant, plaintiff has alleged insufficient facts to state a claim for unjust enrichment.

Based on the foregoing, the undersigned recommends that the Court DISMISS plaintiff's claim for unjust enrichment against craigslist with leave to amend.

g.  Civil Conspiracy (Count 7)

Defendant craigslist also argues that the amended complaint fails to allege a cause of action for civil conspiracy. Dkt. 37 at 26-27.

Civil conspiracy is only actionable if the plaintiff can show an underlying actionable claim which was accomplished by the conspiracy. *W.G. Platts v. Platts*, 73 Wn.2d 434, 438 (1968). In order to state a cause of action for a civil conspiracy the plaintiff must allege that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Newton Ins. Agency & Brokerage v. Caledonian Ins. Group*, 114 Wn. App. 151, 160 (2002).

First, as has been discussed in this Report and Recommendation, plaintiff's amended complaint alleges sufficient facts to plausibly state viable claims under federal and state law against craigslist. Additionally, plaintiff's complaint alleges an agreement existed between craigslist and the traffickers to promote the illegal advertisements by which plaintiff was sold as a sexual slave and by which the defendants as well as individual sex traffickers and sex purchasers evaded law enforcement. Dkt. 1-2 at ¶ 59, 60, 69, 71. Plaintiff's complaint also alleges that craigslist developed features and guidelines so that the traffickers could continue to achieve their illegal means while evading law enforcement. *Id.* at ¶¶ 61-62, 71. Accordingly, plaintiff's complaint alleges sufficient facts to plausibly state a cause of action for damages under a civil conspiracy theory.

For these reasons, the undersigned recommends that plaintiff's Count 7 should NOT BE DISMISSED.

> h.  18 U.S.C. § 1595 (Count 9)

Finally, craigslist argues that plaintiff's amended complaint fails to state a cause of action pursuant to 18 U.S.C. § 1595.

As discussed above, Congress enacted Section 1595 in 2003 to provide a private right of civil action for victims of human trafficking; recovery against individuals who financially benefit from participation in the trafficking venture was added in the 2008 amendment. *Ditullio v. Boehm*, 662 F.3d 1091, 1094 n.1 (9th Cir. 2011). However, because the statute does not contain a clear intent to apply retroactively, the "financial benefit" cause of action may only apply to conduct occurring on or after December 23, 2008 – the 2008 amendment's effective date. *Owino v. CoreCivic, Inc.*, No. 17-cv-1112-

1   JLS, 2018 WL 2193644 (S.D. Cal. May 14, 2018) (citing *Landgraf v. Usi Film Prods.*,

2   511 U.S. 244, 280 (1994)).

3   　　　To allege beneficiary liability under the TVPRA, a plaintiff must allege that the

4   defendant (1) knowingly benefited, financially or by receiving anything of value, (2) from

5   participating in a venture, (3) which the defendant knew or should have known has

6   engaged in a violation of 18 U.S.C. § 1591. 18 U.S.C. § 1595. Section 1595 permits civil

7   action for damages under Section 1591 and should be interpreted broadly. *Nobel v.*

8   *Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (citing *Peyton v. Rowe*, 391 U.S.

9   54, 65 (1968)).

10   　　　Here, plaintiff's complaint is alleging that craigslist is liable for Section 1595

11   violations under a beneficiary liability theory. Dkt. 1-2 at ¶¶ 223-227, Dkt. 48 at 8.

12   Plaintiff may allege this cause of action for conduct that occurred on or after December

13   23, 2008. Plaintiff alleges that she was trafficked continually for several years beginning

14   when she was 12 years old. Dkt. 1-2 at ¶ 37. Plaintiff also alleges that she was 17 years

15   old in 2008. *Id.* at ¶ 149. Accordingly, plaintiff's Section 1595 beneficiary liability claims

16   for conduct allegedly occurring before December 23, 2008 should be dismissed,

17   because the 2008 amendment creating beneficiary liability does not apply retroactively.

18   *See*, 18 U.S.C § 1595; *Owino v. CoreCivic, Inc.*, No. 17-cv-1112-JLS, 2018 WL

19   2193644 (S.D. Cal. May 14, 2018) (citing *Landgraf v. Usi Film Prods.*, 511 U.S. 244,

20   280 (1994)).

21   　　　It is plausible, based on plaintiff's allegations, that some of the alleged conduct

22   occurred on or after December 23, 2008. Plaintiff is alleging that craigslist knew that

23   human trafficking was occurring on its website and that plaintiff was being trafficked on

24

25

the craigslist website. Plaintiff also alleges that craigslist received benefits in the form of the fees paid by the traffickers and from the increase in website usage by the prospective purchasers of plaintiff. Next, the complaint alleges that craigslist not only knew that human trafficking was occurring on its website, but that craigslist was part of an active conspiracy with plaintiff's traffickers to traffic plaintiff. The complaint alleges that craigslist was a participant in this venture and knew or should have known that the venture was engaged in trafficking plaintiff.

Accordingly, plaintiff plausibly alleges a cause of action for violation of Section 1595 against craigslist. Therefore, the Court should NOT DISMISS plaintiff's count 9.

Conclusion

Based on the foregoing, the undersigned recommends that the Court DENY Wyndham's motion to dismiss (Dkt. 38). The Court should GRANT IN PART and DENY IN PART craigslist's motion (Dkt. 37). The undersigned recommends that the Court dismiss plaintiff's count 4 and 5 with prejudice against craigslist. The undersigned recommends that the Court dismiss plaintiff's counts 1 and 6 against craigslist with leave to amend. The Court should not dismiss plaintiff's remaining claims against craigslist.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a

response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on May 1, 2020, as noted in the caption.

Dated this 17th day of April, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 40