1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

M. L.,

       Plaintiff,

  v.

CRAIGSLIST INC, G6 HOSPITALITY
LLC, WYNDHAM HOTELS AND
RESORTS INC, 2005 INVESTORS
LLC,

       Defendants.

CASE NO. C19-6153 BHS-TLF

ORDER ADOPTING REPORT
AND RECOMMENDATION

   This matter comes before the Court on the Report and Recommendation ("R&R")

of the Honorable Theresa L. Fricke, United States Magistrate Judge, Dkt. 62, Defendant

craigslist, Inc.'s ("craigslist") objections, Dkt. 89, Defendant Wyndham Hotels &

Resorts, Inc.'s ("Wyndham") objections, Dkt. 94, Defendant 2005 Investors LLC's

objections,[1] Dkt. 95, and Plaintiff M.L.'s ("Plaintiff") objections to the R&R, Dkt. 96.

---

[1] Defendant 2005 Investors, LLC did not submit its own specific objections, but rather joined craigslist's and Wyndham's objections to "the R&R's interpretation of the legal elements required for a cognizable Trafficking Victims Reauthorization Act" claim. Dkt. 95 at 1. Defendant 2005 Investors, LLC has not provided a specific objection as required by Fed. R. Civ. P 72(b)(2), and thus the Court will not consider its objection.

# I.     Factual and Procedural History

Plaintiff alleges that she is a victim of sex trafficking. Dkt. 1-2. She brings claims against craigslist and Wyndham alleging that the Defendants are liable because her traffickers advertised her on craigslist and because she was held at a hotel owned by Wyndham. *Id.*

Plaintiff alleges that, beginning when she was 12 years old, traffickers would use craigslist to post advertisements and photographs of Plaintiff to solicit commercial sex purchases. *Id.* ¶¶ 37–38. Plaintiff contends that her traffickers would create the advertisements in accordance with craigslist's Terms of Use and used the craigslist guidelines to create, develop, and format the advertisements. *Id.* ¶¶ 38–39. For example, Plaintiff alleges that craigslist had a policy to blur and crop images posted on its "erotic services" section of the website and that traffickers used this policy to obscure her age and identity. *Id.* ¶ 55. She also alleges that the traffickers would pay craigslist a fee to post the advertisements on the "erotic services" section of the website. *Id.* ¶ 40.

Plaintiff contends that traffickers and purchasers knew that craigslist allowed them to advertise and purchase sex trafficking victims. *Id.* ¶ 41. Plaintiff also alleges that craigslist facilitated and assisted anonymous communications between sex purchasers and traffickers. *Id.* ¶ 42. The complaint alleges that craigslist was aware that its website hosted, facilitated, and aided the trafficking of minors. *Id.* ¶ 44. Plaintiff further states that craigslist benefitted from her advertisements on its website because traffickers paid a fee to post the advertisement and the advertisements attracted large numbers of users to its website. *Id.* ¶¶ 45–47. In sum, Plaintiff alleges that there was a relationship between

1   craigslist and her traffickers by which they contracted and conspired to advertise Plaintiff

2   for commercial sex and evade law enforcement. *Id.* ¶¶ 69–71, 75.

3        In regard to Wyndham, Plaintiff alleges that Wyndham owns, operates, and

4   controls the Howard Johnson Inn brand, including the property located at 1233 Central

5   Avenue North, Kent, WA 98032. *Id.* ¶¶ 22, 116(b), 121. Plaintiff further alleges that

6   Wyndham controls the training and policies for the Howard Johnson brand hotel in Kent,

7   Washington. *Id.* ¶ 22(b). Plaintiff contends that Wyndham receives a percentage of the

8   gross room revenue from the money generated by the Howard Johnson location in Kent.

9   *Id.* ¶¶ 22(b)–(c). The complaint states that Wyndham knew that human trafficking was

10  occurring at Howard Johnson Inn hotels but failed to take adequate steps to train staff to

11  prevent and report trafficking. *Id.* ¶ 118.

12       Plaintiff alleges that traffickers transported her to the Howard Johnson Inn in

13  Kent, which is owned by Wyndham, where she was assaulted, advertised, sold, and held

14  against her will. *Id.* ¶ 121. She alleges that traffickers held her at the Kent Howard

15  Johnson location for over one year from 2007 to 2008. *Id.* ¶ 149. Plaintiff also alleges

16  that the traffickers would pay Wyndham to rent the rooms. *Id.* ¶ 152. The complaint

17  states that purchasers would arrive at the Howard Johnson location and could be seen

18  waiting in the parking lots, common areas, and hallways of the hotel. *Id.* ¶ 156–57.

19  Plaintiff contends that Wyndham had actual and constructive knowledge that sex

20  trafficking was occurring its properties, yet "allowed, authorized, permitted, induced, or

21  encouraged the trafficking of individuals, including [Plaintiff]." *Id.* ¶ 121.

22

Craigslist removed this case from Pierce County Superior Court to the District Court on December 2, 2019. Dkt. 1. On February 3, 2020, craigslist filed a motion to dismiss. Dkt. 37. Wyndham filed its own motion to dismiss on February 3, 2020 as well. Dkt. 38. On March 10, 2020, Judge Fricke heard oral arguments on the motions to dismiss. Dkt. 55.

On April 17, 2020, Judge Fricke issued the R&R recommending that the Court deny Wyndham's motion to dismiss and grant in part and deny in part craigslist's motion to dismiss. Dkt. 62. On May 15, 2020, craigslist filed objections, Dkt. 89, Wyndham filed objections, Dkt. 94, Defendant 2005 Investors LLC filed objections, Dkt. 95, and Plaintiff filed objections, Dkt. 96. On June 12, 2020, Wyndham responded to Plaintiff's objections, Dkt. 121, as did craigslist, Dkt. 122. Plaintiff also responded to Wyndham's, Dkt. 123, and craigslist's objections, Dkt. 124, on June 12, 2020.

## II.   Discussion

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

**A.   Craigslist's Objections**

1.   47 U.S.C. § 230

a.   State Law Claims

Craigslist argues that all of Plaintiff's state law claims are barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and objects to the R&R's

1    conclusion that "craigslist 'materially contributed' to the illegality of the third-party

2    advertisements trafficking Plaintiff." Dkt. 89 at 8. The CDA provides that "website

3    operators are immune from liability for third-party information . . . unless the website

4    operator 'is responsible, in whole or in part, for the creation or development of [the]

5    information." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir.

6    2019), *cert. denied* __ S.Ct. __, 2020 WL 2515458, 206 L. Ed. 2d 936 (2020) (quoting 47

7    U.S.C. §§ 230(c)(1) & (f)(3)).

8         The Ninth Circuit uses a three-prong test to determine CDA Section 230

9    immunity. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). Immunity from

10   liability exists for (1) a provider or user of an interactive computer service (2) whom a

11   plaintiff seeks to treat as a publisher or speaker (3) of information provided by another

12   information content provider. *Id.* at 1100–01. When a plaintiff cannot allege enough facts

13   to overcome Section 230 immunity, a plaintiff's claims should be dismissed. *Dyroff*, 934

14   F.3d at 1097. Plaintiff has alleged sufficient facts at this stage to overcome craigslist's

15   claim of CDA immunity.

16        The CDA "immunizes providers of interactive computer services against liability

17   from content created by third parties[.]" *Fair Housing Council of San Fernando Valley v.*

18   *Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). However, for content a

19   website creates itself, or is "responsible, in whole or in part" for creating or developing,

20   the website is not immune under the CDA. *Id.* The Ninth Circuit has made clear that the

21   term "development" does not mean "augmenting the content generally." *Id.* at 1167–68;

22   *see also Dyroff*, 937 F.3d at 1096. Rather, a website must materially contribute to the

1    development of the third-party-content's alleged unlawfulness. *Roommates.com*, 521

2    F.3d at 1167–68. In *Roommates.com*, the Ninth Circuit offered examples as to what does

3    and does not amount to "development" under the CDA:

4           If an individual uses an ordinary search engine to query for a "white
            roommate," the search engine has not contributed to any alleged
5           unlawfulness in the individual's conduct; providing neutral tools to carry
            out what may be unlawful or illicit searches does not amount to
6           "development" for purposes of the immunity exception. A dating website
            that requires users to enter their sex, race, religion and marital status
7           through drop-down menus, and that provides means for users to search
            along the same lines, retains its CDA immunity insofar as it does not
8           contribute to any alleged illegality; this immunity is retained even if the
            website is sued for libel based on these characteristics because the website
9           would not have contributed materially to any alleged defamation.

10   *Id.* at 1169.

11          Craigslist argues that the R&R improperly focused on whether it facilitated the

12   traffickers' postings and "failed to adhere to the 'crucial distinction' between enabling

13   third-party content[] and actions that actually 'make the displayed content illegal or

14   actionable.'" Dkt. 89 at 12 (quoting *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269 n.4 (9th

15   Cir. 2016)). Craigslist additionally calls out two cases against the website where a court

16   addressed CDA material contribution arguments: *Chicago Lawyers' Committee for Civil

17   Rights Under Law, Inc. v. craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), and *Dart v.

18   craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009).

19          In *Chicago Lawyers'*, the plaintiff brought suit on behalf of its members against

20   craigslist for allegedly violating the Fair Housing Act's prohibition for ads that state a

21   preference with respect to any of the protected classes. *Chi. Lawyers'*, 519 F.3d at 668.

22   The plaintiff alleged that the notices that advertised housing on craigslist were

1   discriminatory, and craigslist asserted CDA immunity. *Id.* at 668–69. The Seventh Circuit

2   held that it was improper to treat craigslist as having contributed to the development of

3   the allegedly discriminatory ads and found craigslist immune. *Id.* at 671–72. In *Dart*, the

4   Sheriff of Cook County, Illinois sued craigslist for postings on the website's "erotic

5   services" section, alleging that the postings constituted a public nuisance. *Dart*, 665 F.

6   Supp. 2d at 961–63. Again, craigslist argued that it was immune from liability pursuant to

7   the CDA. *Id.* at 965. The plaintiff in *Dart* alleged that craigslist knowingly arranged

8   meetings for the purpose of prostitution and directed people to places of prostitution, as

9   well as that craigslist provides contact information of prostitutes. *Id.* at 967. The court

10  rejected this argument, comparing craigslist to a newspaper that publishes information

11  supplied by users. *Id.* In a final attempt, the plaintiff alleged that craigslist materially

12  contributed to the creation of the content simply by having an "adult services" category.

13  *Id.* at 968. The court again rejected this argument, finding that "'nothing in the service

14  craigslist offers induces anyone to post any particular listing.'" *Id.* at 968 (quoting *Chi.*

15  *Lawyers'*, 519 F.3d at 671).

     Plaintiff here argues that craigslist is liable for her state law claims because it is

16

17  responsible, in whole or in part, for the development or creation of the offending content.

18  Dkt. 48 at 14–19. And her complaint makes numerous allegations regarding craigslist's

19  involvement in developing or creating the advertisements used to traffic Plaintiff—more

20  than the plaintiffs in *Chicago Lawyers'* or in *Dart*. Plaintiff alleges that traffickers

21  developed the advertisements in conjunction with craigslist's rules and guidelines. Dkt.

22  1-2, ¶¶ 38–39, 50, 54, 58. Plaintiff also alleges that the traffickers would pay a fee to

1   craigslist so that the advertisement could be displayed in the "erotic services" section of

2   the website. *Id.* ¶¶ 40–41, 45. Plaintiff claims that craigslist facilitated and assisted

3   traffickers and purchasers through its communication system, which allowed anonymous

4   communication and evasion of law enforcement. *Id.* ¶¶ 42–43, 54. Through craigslist's

5   unique system, Plaintiff alleges that craigslist facilitated her trafficking and reaped

6   financial benefits. *Id.* ¶¶ 45–46, 48, 63, 65. Moreover, Plaintiff alleges that it was

7   craigslist's policy that images on the "erotic services" section of the website were to be

8   blurred and cropped and that traffickers used this policy to facilitate and further

9   Plaintiff's trafficking. These allegations go beyond a mere assertion that craigslist

10  contributed materially to Plaintiff's trafficking by having an "erotic services" section.

11  Plaintiff rather asserts specific, concrete actions taken by craigslist that facilitated her

12  trafficking. At this stage, Plaintiff has alleged enough facts to plausibly state a claim that

13  craigslist was responsible, in whole or in part, for the development or creation of the

14  unlawful advertisements which trafficked Plaintiff.

15         The R&R reached the same conclusion that Plaintiff had alleged sufficient facts to

16  plausibly state a claim that craigslist was a content creator and not merely a publisher of

17  third-party content. R&R at 25–26. Craigslist objects to the R&R "giving significant

18  weight to Plaintiff's conclusory allegation that craigslist supposedly promoted the

19  development of unlawful content by issuing 'rules' and 'guidelines' for postings." Dkt.

20  89 at 11. However, Plaintiff's complaint contains well-pled facts, and the Court "must

21  accept all factual allegations of the complaint as true and draw all reasonable inferences

22  in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

1   The parties will have the opportunity to conduct discovery as to whether craigslist did

2   materially contribute to the unlawful third-party content as alleged by Plaintiff. At this

3   stage, on a motion to dismiss, Plaintiff has alleged sufficient facts, and it is plausible that

4   craigslist was "responsible, . . . in part," for the development or creation of the

5   complained of advertisements. Therefore, the Court adopts the R&R as to craigslist's

6   assertion of CDA immunity as to Plaintiff's state law claims.

7           b.   Federal Law Claim

8           Craigslist argues for the first time in its objection that Plaintiff's federal

9   Trafficking Victims Protection Reauthorization Act ("TVPRA") claim is also barred by

10  CDA immunity. Dkt. 89 at 14–15. Plaintiff has had the opportunity to respond to this new

11  argument. Dkt. 124 at 18–19. Therefore, the Court exercises its discretion to consider

12  craigslist's TVPRA immunity argument. *Akhtar v. Mesa*, 698 F.3d 1202, 1208 (9th Cir.

13  2012).

14          The CDA makes no distinction between federal and state law, 47 U.S.C. § 230(c),

15  and the Ninth Circuit has analyzed CDA immunity for federal claims, *see*

16  *Roommates.com*, 521 F.3d at 1164 (applying a website's CDA defense to alleged Fair

17  Housing Act violations). However, in 2018, Congress amended the CDA through the

18  Fight Online Sex Trafficking Act ("FOSTA") to clarify the scope of immunity in relation

19  to the TVPRA. PL 115-164, 132 Stat. 1253 (2018). The FOSTA amendment provides, in

20  relevant part, that CDA immunity does not impair or limit "any claim in a civil action

21  brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a

22  violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). Section 1591 is the

criminal component of the TVPRA, punishing whoever knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" or benefits from such participation in a venture. 18 U.S.C. § 1591(a)(1)–(2).

Plaintiff has made clear that she is not alleging a violation of § 1591 but rather is alleging that craigslist has violated the TVPRA through beneficiary liability found in § 1595. Dkt. 124 at 18. The Court agrees with craigslist's argument that FOSTA does not create an exemption for all § 1595 claims. *See* Dkt. 89 at 15. Yet, for the same reasons discussed in the preceding section on Plaintiff's state law claims, CDA immunity for Plaintiff's federal law TVPRA claim is not warranted at this stage. Plaintiff has alleged sufficient facts in regard to craigslist's development or creation of the advertisements which trafficked Plaintiff. And under those facts, it is plausible that craigslist may not be immune under the CDA for Plaintiff's federal law claim as well. Therefore, the Court denies craigslist's motion to dismiss based on CDA immunity as to Plaintiff's TVPRA claim.

    2.  <u>Statute of Limitations</u>

Craigslist next objects to the R&R's conclusion that Plaintiff's state law claims are timely. Washington provides a three-year statute of limitations for all claims based on injuries suffered as a result of childhood sexual abuse. RCW 4.16.340(1). The statute of limitations is tolled until the child reaches the age of eighteen. *Id.* at (3). The R&R concluded that, since Plaintiff's complaint alleges that she was between the ages of sixteen and seventeen from 2007 to 2008, Plaintiff would have reached the age of

1  eighteen during 2009. Plaintiff alleges that she was "trafficked continuously between the

2  ages of 12 and 18 years of age, and beyond," Dkt. 1-2, ¶ 37, but does not assert a specific

3  date or date range when the trafficking underlying the complaint ended. The R&R

4  concluded that it is not clear from Plaintiff's allegations, read with the required liberality,

5  that Plaintiff's complaint is barred by the statute of limitations. Dkt. 62 at 19.

6        Craigslist objects to this conclusion, arguing that Plaintiff's allegations are

7  threadbare and conclusory statements. And craigslist asserts that Plaintiff must plead

8  tolling facts for her claims to be timely because there are no plausible allegations that

9  Plaintiff was trafficked on craigslist between 2016 and 2019. The Court agrees with the

10  R&R's conclusion that, reading with the required liberality, Plaintiff has pled at least one

11  fact that supports construing the statute of limitations in her favor, specifically that she

12  continued to be trafficked since the age of eighteen via craigslist advertisements. *Cf. C.S.*

13  *v. Corp. of the Catholic Bishop of Yakima*, No. 13-CV-3-51-TOR, 2015 WL 5373144, at

14  *11 (E.D. Wash. 2013) (finding that, because the plaintiff asserted a mechanical

15  recitation of the language of RCW 4.16.340 without supporting factual content, his

16  claims were time barred). Accepting this fact as true, Plaintiff has pled sufficient facts

17  that support an inference that damages related to her trafficking occurred or were

18  discovered within the last three years.

19        Dismissal on statute of limitations ground is inappropriate at this stage, but the

20  Court agrees with the R&R's conclusion that some of Plaintiff's claim might be barred by

21  applicable statute of limitations. The Court adopts the R&R's decision to order phased

22

1    discovery and additional briefing to make an early assessment as to whether any of

2    Plaintiff's state law claims are time barred.

3        3.  Failure to State a Claim

4        Craigslist next contends that all of Plaintiff's claims should be dismissed for

5    failure to state a claim. The R&R granted craigslist's motion in part as to Plaintiff's

6    negligence, unjust enrichment, and ratification/vicarious liability claims. The Court

7    adopts the R&R in full as to these claims.[2] Craigslist objects, however, to the R&R's

8    finding that Plaintiff has stated a claim under 18 U.S.C. § 1595 and for state law claims

9    of outrage, criminal profiteering, the Sexual Exploitation of Children Act ("SECA"), and

10   civil conspiracy. The Court will review these objections in turn.

11       a.  18 U.S.C. § 1595

12       A plaintiff may recover damages under the TVPRA against defendants who (1)

13   knowingly benefit (2) from participation in a venture (3) which that person knew or

14   should have known has engaged in sex trafficking. 18 U.S.C. § 1595(a); *accord B.M. v.*

15   *Wyndham Hotels &Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D.

16   Cal. July 30, 2020). Craigslist objects to the R&R's finding that Plaintiff has stated a

17   TVPRA claim against it, specifically that the R&R was wrong to conclude that Plaintiff

18   alleged craigslist's knowledge of her trafficking and that the R&R misinterpreted the

19   "participation in a venture" element.

20

21   _____

22       [2] Plaintiff objects to the R&R's finding to dismiss these claims. Her objections are discussed in
     full. *See infra* Section C(1).

1        Craigslist argues that to state a claim under § 1595, Plaintiff must allege that

2   craigslist possessed knowledge or constructive knowledge about Plaintiff's *specific*

3   trafficking, rather than general, abstract knowledge of potential trafficking. Within the

4   past year, district courts have grappled with whether a beneficiary liability defendant

5   must have actual knowledge of the specific sex trafficking to be held liable. *See B.M.*,

6   2020 WL 4368214, at *4–*5 (finding that hotel defendants need not have actual

7   knowledge of the plaintiff's sex trafficking venture for TVPRA beneficiary liability);

8   *A.C. v. Red Roof Inns, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261, at *4–*5 (S.D. Ohio

9   June 16, 2020) (holding that the plain text § 1595(a) states that the standard is a

10  negligence standard of constructive knowledge); *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-

11  755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019) (same); *M.A. v. Wyndham Hotels

12  & Resorts*, 425 F. Supp. 3d 959, 965–66 (S.D. Ohio 2019) (same). *See also J.B. v. G6

13  Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *9 n.3 (N.D. Cal. Aug. 20,

14  2020) (discussing, but not deciding, craigslist's actual or constructive knowledge

15  argument). These cases make clear that this Court should apply a negligence, constructive

16  knowledge standard.

17        In dicta, the Northern District of California noted that a website operator may have

18  constructive knowledge for a TVPRA claim if it "openly and knowingly makes a deal

19  with sex traffickers to support the venture by posting advertisements featuring trafficked

20  minors in exchange for a cut of the proceeds," even if the website did not know the

21  names or identities of the particular people being trafficked. *J.B.*, 2020 WL 4901196, at

22  *9 n.3. The Court finds this line of reasoning persuasive as to whether craigslist had

1    constructive knowledge of Plaintiff's trafficking. Plaintiff has alleged that craigslist was

2    aware that its website was hosting sex trafficking advertisements, Dkt. 1-2, ¶¶ 44, 56, and

3    that craigslist benefitted financially through charging fees for advertisements on its

4    "erotic services" section, *id.* ¶¶ 45, 63. At this stage, Plaintiff has pled sufficient facts to

5    establish that craigslist plausibly had constructive knowledge of her trafficking. Plaintiff

6    does not need to allege that craigslist knew specifically of her trafficking or of Plaintiff's

7    specific identity, but rather that craigslist knowingly fostered a business relationship with

8    traffickers to support the venture of trafficking Plaintiff. Here, Plaintiff has alleged that

9    craigslist knew that traffickers were using the "erotic services" section of its website and

10   that craigslist retained a financial benefit from her traffickers through the purchase of

11   advertisements on the "erotic services" section. Therefore, Plaintiff has sufficiently

12   alleged that craigslist had constructive knowledge of her trafficking.

13     Next, craigslist objects to the R&R's conclusion that craigslist knowingly

14   "participated in a venture" with Plaintiff's traffickers. Craigslist argues that the R&R

15   "failed to engage with craigslist's arguments regarding the ordinary meaning of the words

16   'participation' and 'venture,' as well as the established understanding of those terms in

17   analogous legal contexts." Dkt. 89 at 17. Claiming that the R&R failed to engage with an

18   argument, however, is not a specific objection sufficient for the Court's de novo review.

19   A proper objection requires specific written objections to the findings and

20   recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

21   Cir. 2003) (en banc). Craigslist objects to the R&R's reliance on *Ricchio v. McLean*, 853

22   F.3d 553 (1st Cir. 2017), and *Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019), but does

1   not provide any specific arguments as to other authorities the Court should consider.

2   While craigslist does provide general definitions of the terms "venture" and

3   "participation," it fails to submit specific objections as to why the Court should rely on

4   those definitions rather than the conclusions in the R&R. Therefore, the Court adopts the

5   R&R in full as to the TVPRA claim.

6        b.  State Law Claims

7        Craigslist's remaining objections argue that Plaintiff has failed to state a claim for

8   her state law claims, including outrage, criminal profiteering, the Sexual Exploitation of

9   Children Act, and civil conspiracy. However, craigslist has failed to object specifically to

10  the R&R's findings that Plaintiff has sufficiently pled allegations for these claims. Rather

11  craigslist puts forth the same arguments found in its motion to dismiss. *Compare* Dkt. 37

12  at 23–25, 26–27 *with* Dkt. 89 at 24–26. Without specific objections to the R&R's

13  conclusions, the Court will not review craigslist's generalized objections.

14       Therefore, the Court adopts the R&R in full as to craigslist's motion to dismiss.

15  **B.   Wyndham's Objections**

16       1.  <u>Shotgun Pleading</u>

17       Wyndham first objects to the R&R's conclusion that the complaint is not an

18  impermissible "shotgun" pleading. Dkt. 94 at 8–9. A proper objection requires specific

19  written objections to the findings and recommendations in the R&R. *Reyna-Tapia*, 328

20  F.3d at 1121. "Courts are not obligated to review vague or generalized objections to an

21  R&R; a petitioner must provide specific written objections." *Ybarra v. Martel*, No.

22  09CV1188-LAB AJB, 2011 WL 613380, at *1 (S.D. Cal. Feb. 11, 2011). Wyndham has

1   failed to properly object to and raise specific objections to the R&R's conclusion that the

2   complaint is not a "shotgun" pleading. Instead, Wyndham reiterates the same argument it

3   presented in its motion to dismiss and the same argument that Judge Fricke rejected.

4   Thus, the Court adopts the R&R on this issue.

5      2.   Failure to State a TVPRA Claim

6         Wyndham also objects to the R&R's conclusion that Plaintiff has stated a TVPRA

7   claim against Wyndham. Dkt. 94 at 9–17. First, Wyndham takes issue with Judge

8   Fricke's decision to not resolve factual disputes in the context of a motion to dismiss

9   under Rule 12(b)(6). *See id.* at 10–11. Wyndham objects to this conclusion and argues

10  that it is not asking the Court to resolve a factual dispute but that the complaint lacks

11  well-pled allegations that it owned or operated the Howard Johnson Inn in Kent,

12  Washington. *Id.*

13        However, Plaintiff has alleged that Wyndham "owns, supervises, and/or operates

14  the Howard Johnson Inn." Dkt. 1-2 at ¶ 24(h). The Court "must accept all factual

15  allegations of the complaint as true and draw all reasonable inferences in favor of the

16  nonmoving party." *TwoRivers*, 174 F.3d at 991. Even if there are factual disputes as to

17  who owns or operates the Howard Johnson Inn, Judge Fricke is correct that material

18  factual disputes cannot be resolved through a 12(b)(6) motion to dismiss. *Dahlia v.*

19  *Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). Thus, the Court adopts the R&R on this

20  issue.

21        Next, Wyndham objects to Judge Fricke's decision not to follow *United States v.*

22  *Afyare*, 632 Fed. Appx. 272 (6th Cir. 2016) to define "participation in a venture" under

§ 1595. In *Afyare*, the Sixth Circuit evaluated the phrase "participation in a venture" in the context of § 1595's criminal companion statute—18 U.S.C. § 1591. Unlike § 1595, § 1591 contains a definition of this phrase. *Compare* 18 U.S.C. § 1591(e)(4) *with* 18 U.S.C. § 1595. Wyndham argues that because *Afyare* predates the 2018 amendment to the TVPRA and provides a more concrete definition of "participation in a venture," the Court should apply the *Afyare* criminal definition of "participation" to the civil definition of "participation."

The Court agrees with the R&R's conclusion that the definition of "participation in a venture" found in § 1591(e)(4) is limited to § 1591. Section 1591 specifically states the definitions "in this section," 18 U.S.C. § 1591(e), and nothing in § 1591 or § 1595 imputes the terms found in one section to the other. The Court therefore adopts the R&R on the issue of whether *Afyare* and § 1591's definition apply to this case.

Wyndham additionally takes issue with Judge Fricke's reliance on *M.A. v. Wyndham Hotels & Resorts, Inc.,* 2019 WL 4929297 at *3; *H.H. v. G6 Hospitality, LLC, et al.*, 2019 WL 6682152, at *6; and *S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-cv-1194, 2020 WL 1244192 at *5 (S.D. Ohio Mar. 16, 2020). Wyndham argues that these complaints also suffer "from 'shotgun' pleading defects" and that the decisions "incorrectly characterize [hotel] franchising relationships." Dkt. 94 at 15. Wyndham is attempting to relitigate cases which the Court has no control over and does not point to how the R&R's reliance on these cases is insufficient or provide other authorities for the Court to consider. Judge Fricke was well within her discretion to rely on these cases and properly did so.

1    It appears to the Court that Wyndham continuously objects to the R&R's

2    conclusion that the Complaint sufficiently states a TVPRA claim against Wyndham.

3    However, Wyndham is attempting to reargue the same issues it puts forth in its motion to

4    dismiss and fails to provide any specific objections to the R&R. *Compare* Dkt. 38 at 6–11

5    *with* Dkt. 94 at 11–17. Without specific, concrete objections to the conclusions of the

6    R&R, the Court will not review Wyndham's generalized objections. *See Ybarra*, 2011

7    WL 613380, at *1. Thus, the Court adopts the R&R in full as to Wyndham's motion to

8    dismiss.

9    **C.    Plaintiff's Objections**

10       1.   Failure to State Count 1, Count 5, and Count 6 Against craigslist

11    Plaintiff raises objections to the R&R's recommendation that this Court dismiss a

12    variety of her state law claims against craigslist: negligence (Count 1),

13    ratification/vicarious liability (Count 5), and unjust enrichment (Count 6). Dkt. 96 at 19–

14    25. Plaintiff has failed to raise any specific, concrete objections as to the R&R's decision

15    to dismiss her negligence, vicarious liability, and unjust enrichment claims and puts forth

16    the same arguments found in Plaintiff's response to craigslist's motion to dismiss. *See*

17    Dkt. 48. The Court therefore adopts the R&R as to its dismissal to these claims.

18       2.   Sexual Exploitation of Children Act

19    Plaintiff does specifically object to the R&R's conclusion that the Washington

20    Sexual Exploitation of Children Act ("SECA") does not state an independent cause of

21    action under Washington law. SECA, RCW 9.68A, is a Washington criminal statute that

22    criminalizes, *inter alia*, the sexual exploitation of a minor. RCW 9.68A.040. The R&R

1    concluded that "there is no separate cause of action for childhood sexual abuse arising

2    from the Sexual Exploitation of Children Act," Dkt. 61 at 33 (citing *Schorno v. Kannada*,

3    167 Wn. App. 895, 900–01 (2012) (internal citation omitted)), but found that SECA

4    allows for a recovery of attorney fees and costs, *id.* at 34. Plaintiff asserts a good faith

5    belief, on the other hand, that "Washington caselaw seems to open the door to a separate

6    cause of action under SECA as long as the plaintiff shows predicate behavior on the part

7    of the Defendants that violated SECA, short of criminal charges or a conviction." Dkt. 96

8    at 22.

9          RCW 9.68A.130 provides that a minor is entitled to recover costs and attorneys'

10   fees if the minor prevails in a civil action arising from violation of SECA. The

11   Washington Court of Appeals held that "to establish an entitlement to an award of

12   attorney fees pursuant to RCW 9.68A.130, the plaintiff must first establish that he or she

13   prevailed in a civil action arising from an act or acts constituting a violation of a specific

14   provision of chapter 9.68A RCW." *Furnstahl v. Barr*, 197 Wn. App. 168, 174 (2016).

15   Federal courts in Washington have allowed plaintiffs claiming a SECA violation the

16   opportunity to recover attorneys' fees if they prevail on the underlying action. *See Boy 7*

17   *v. Boy Scouts of America*, No. CV–10–449–RHW, 2011 WL 2415768, at*4 (E.D. Wash.

18   2011); *Boy 1 v. Boy Scouts of America*, 832 F. Supp. 2d 1282, 1292 (W.D. Wash. 2011);

19   *Roe v. Cty. of Spokane*, No. CV-06-0357-FVS, 2008 WL 4619836, at *5; *J.C. v. Society*

20   *of Jesus*, 457 F. Supp. 1201, 1204 (W.D. Wash. 2006). Consequently, the Court adopts

21   the R&R's recommendation that it interpret Plaintiff's count 4 as a claim for attorneys'

22   fees and costs and dismisses any claim of independent tort liability under SECA with

1    prejudice. The Court also holds that whether Defendants have engaged in a SECA

2    violation amounting to Plaintiff's ability to recover costs and fees will be determined at a

3    later stage.

4         3.  TVPRA's Retroactive Application

5         Finally, Plaintiff objects to the R&R's conclusion that § 1595 of the TVPRA does

6    not apply retroactively. Dkt. 62 at 10. Congress enacted § 1595 in 2003 and amended in

7    2008 to provide a private right of action for victims of human trafficking. Pub.L. No.

8    108–193, § 4(a)(4), 117 Stat. 2875, 2877 (2003); Pub.L. No. 110–457, § 221, 122 Stat.

9    5044, 5067 (2008). The "financial benefit" cause of action under §1595—the cause of

10   action Plaintiff brings against Defendants—was added in the 2008 amendment. Pub.L.

11   No. 110–457, § 221, 122 Stat. at 5067. The R&R concluded that, because the amended

12   statute does not contain a clear intent to apply retroactively, Plaintiff's TVPRA claims

13   may only apply to conduct occurring on or after December 23, 2008, i.e. the 2008

14   amendment's effective date. Dkt. 62 at 10. Plaintiff objects to this conclusion, claiming a

15   continuing violation theory and that Congress's intent allows for the TVPRA's

16   retroactive application.

17        The Supreme Court has recognized a "time honored presumption [that] unless

18   Congress has clearly manifested its intent to the contrary," "the legal effect of conduct

19   should ordinarily be assessed under the law that existed when the conduct took place."

20   *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997) (quoting *Landgraf v. USI

21   Film Prods.*, 511 U.S. 244, 265, 268 (1994)). Yet, "even absent specific legislative

22   authorization, application of a new statute to cases arising before its enactment is

1   unquestionably proper in many situations." *Landsgraf*, 511 U.S. at 245. To determine

2   retroactivity of a statute, the court first looks to "whether Congress has expressly

3   prescribed the statute's proper reach." *Id.* at 280. And if no express provision exists, the

4   court must then determine whether the statute would have retroactive effect, meaning

5   "whether it would impair rights a party possessed when he acted, increase a party's

6   liability for past conduct, or impose new duties with respect to transactions already

7   completed." *Id.* If retroactive effect is found, then the presumption against retroactivity

8   stands.

9          Even though there is no express grant of retroactivity found in § 1595, Plaintiff

10  argues that there is no retroactive effect warranting the presumption against retroactivity.

11  Dkt. 96 at 27 ("The goal behind the TVPA and the TVPRA is the same: to protect victims

12  of human trafficking."). The Ninth Circuit has addressed the retroactive effect of the

13  2003 TVPA amendment. *Ditullio v. Boehm*, 662 F.3d 1091, 1099–1102 (9th Cir. 2011).

14  The 2003 amendment is similar to the 2008 amendment in that Congress did not make

15  explicit in either amendment whether the civil right of action had retroactive application.

16  *Compare* Pub.L. No. 108–193, § 4(a)(4), 117 Stat. at 2877 *with* Pub.L. No. 110–457, §

17  221, 122 Stat. at 5067. Therefore, when looking to the retroactive effect, the Ninth

18  Circuit found that § 1595, as created in 2003, "changed substantive law and attached new

19  legal burdens to violations" of the TVPRA. *Ditullio*, 662 F.3d at 1100. Section 1595 as

20  amended in 2008 again changed substantive law and attached legal burdens for violations

21  to new parties—those who financially benefit from trafficking. Retroactively applying

22  the amendment would subject defendants to increased liability not contemplated when

they engaged in the alleged conduct, amounting to an impermissible retroactive effect.[3]

Consequently, the TVPRA amendment may not be applied to conduct occurring before

December 23, 2008.

Plaintiff also argues a continuing violation theory for the retroactive application of

§ 1595. Dkt. 96 at 26. However, Plaintiff fails to provide any authority that supports her

argument. The Ninth Circuit has also rejected the continuing violation theory to

overcome the presumption against retroactive application of § 1595, albeit for the 2003

amendment. *Ditullio*, 662 F.3d at 1101–02. The Ninth Circuit held that "the continuing

violation theory was not sufficient to overcome the *Landgraf* presumption against

retroactivity for a provision creating new civil liabilities." *Id.* at 1101. For the same

reasons set forth above, the Court adopts the Ninth Circuit's approach in addressing the

retroactivity of the 2003 amendment to the 2008 amendment. Thus, the Court rejects

Plaintiff's arguments as to retroactivity of her TVPRA claim, and Plaintiff may only

recover for harms that occurred on or after December 23, 2008. The Court agrees with

the R&R and Plaintiff that Plaintiff has plead sufficient facts for such a TVPRA claim.

The Court therefore denies Plaintiff's objections.

---

[3] Since the 2008 amendment, several other courts around the county have found the same and held the 2008 amendment is not retroactive. *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 522–23 (D. Md. 2014) (finding that the 2008 TVPRA amendment does not apply retroactively while citing to discussions of other courts regarding the 2003 amendment's lack of retroactive application); *Barjo v. Cherian*, 349 F. Supp. 3d 510, 516 (D. Md. 2018) (same); *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1035, 1312 (M.D. Ga. 2018) (limiting a TVPRA claim, which alleged defendants knowingly benefitted from trafficking, to conduct that occurred after the 2008 amendment); *Abarca v. Little*, 54 F. Supp. 3d 1064, 1068–69 (D. Minn. 2014) (finding that the TVPRA significantly broadens the basis for civil liability).

### III.    Order

The Court having considered the R&R, craigslist's objections, Wyndham's objections, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

(1)    The R&R is **ADOPTED**;

(2)    craigslist's Motion is **GRANTED** in part and **DENIED** in part; and

(3)    Wyndham's Motion is **DENIED**.

Dated this 11th day of September, 2020.

_____

BENJAMIN H. SETTLE
United States District Judge

ORDER - 23