1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

M.L.,

                Plaintiff,

   v.

CRAIGSLIST, INC., et al.,

                Defendants.

CASE NO. C19-6153 BHS-TLF

ORDER ADOPTING IN PART
AND REJECTING IN PART
REPORT AND
RECOMMENDATIONS

13

14

      This matter comes before the Court on the Report and Recommendations ("R&R")
of the Honorable Theresa L. Fricke, United States Magistrate Judge, Dkts. 223, 225.[1]

15

16

17

18

19

20

      The case involves Plaintiff M.L.'s claims against Defendant craigslist for
facilitating her sex trafficking dating back to 2003. Dkt. 187, ¶ 270. M.L. asserts similar
claims against Defendant 2005 Investors, which owned the Howard Johnson Inn where
some of the sex trafficking actually took place. *Id.* ¶ 184. Defendants filed motions to
dismiss and for summary judgment. Dkts. 173, 175, 200.

21

22

---

[1] Most of the documents cited in this Order have both sealed, unredacted versions and
unsealed, redacted versions. The citations in this Order refer to the sealed versions, but the page
numbers cited correspond with the unsealed versions as well.

The R&R recommends that the Court (1) dismiss M.L.'s Trafficking Victims Protection Reauthorization Act ("TVPRA") claims for conduct occurring prior to December 23, 2008; (2) dismiss M.L.'s claims against 2005 Investors LLC for alleged conduct at the Howard Johnson occurring after August 2015—the date 2005 Investors sold its interest in the Howard Johnson location; (3) deny 2005 Investors' and craigslist's motions for summary judgment on statute of limitations because questions of fact remain as to when M.L.'s claims accrued; and (4) limit M.L.'s recovery of costs and attorney fees under the Sexual Exploitation of Children Act ("SECA"). Dkt. 223.

Defendants 2005 Investors and craigslist object to Judge Fricke's recommended denial of their motions for summary judgment on M.L.'s state law claims on statute of limitations grounds. Dkts. 229 (2005 Investors), 231 (craigslist). Craigslist also objects to the R&R's recommendation to strike the DSM-V.

Also before the Court is Judge Fricke's R&R, Dkt. 225, recommending that the Court (1) dismiss M.L.'s negligence claim against craigslist as barred by the Communications Decency Act ("CDA"); (2) dismiss M.L.'s strict liability claim against craigslist as barred by the CDA; (3) dismiss M.L.'s Criminal Profiteering Act ("CPA") claim against craigslist to the extent it relies on the following predicate offenses:

- Trafficking (RCW 9A.40.100) for failure to state a claim;

- Promoting Commercial Sexual Abuse of a Minor (RCW 9.68.101) as barred by the CDA;

- Leading Organized Crime (RCW 9A.82.060) as barred by the CDA;

- Use of Proceeds of Criminal Profiteering (RCW 9A.82.080) for failure to state a claim;

- Sexual Exploitation of a Minor (RCW 9.68A.040) for failure to state a claim;

- Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct (RCW 9.68A.050) as barred by the CDA;

- Sending, Bringing into State Depictions of Minor Engaged in Sexually Explicit Conduct (RCW 9.68A.060) as barred by the CDA;

and (4) deny dismissal of M.L.'s CPA claim to the extent it relies on Promoting Prostitution in the First Degree (RCW 9A.88.070) or Promoting Prostitution in the Second Degree (RCW 9A.88.080).

Craigslist objects to Judge Fricke's recommendation to deny dismissal of M.L.'s CPA claims based on Promoting Prostitution in the First and Second Degrees. Dkt. 232. M.L. objects to Judge Fricke's recommended dismissal of her negligence and strict liability claims and of her CPA claims based on Leading Organized Crime. Dkt. 233.

## I.   FACTUAL BACKGROUND

Plaintiff M.L. was sex trafficked from age twelve to age twenty-six. Dkt. 187, ¶ 42. M.L.'s traffickers would take nude and partially nude photographs of M.L. and post them on craigslist.com to advertise and sell sex acts with M.L. *Id.* ¶ 43. M.L. alleges that her trafficker had to pay a fee to craigslist to post the advertisements on the website and that the ads were created in compliance with craigslist's terms of use. *Id.* ¶¶ 43, 45. Individuals would then contact M.L.'s trafficker and arrange for a time and place to meet

1    to purchase sex acts from M.L.'s trafficker to be performed by M.L. *Id.* ¶ 6. Some of

2    these meetups occurred at Defendants 2005 Investors' and Wyndham Hotels and Resorts

3    Inc.'s hotels. *Id.*

4    **A.    craigslist**

5        Defendant craigslist, Inc. owns and operates a website that "provides an online

6    platform for third-party users to post, browse, and search local classifieds and other

7    content submitted by other users." Dkt. 200 at 9. Users can post items for sale, offer

8    services, or post other content under various categories, filtered by a designated location.

9    *Id.*

10        M.L. argues that craigslist's website helped traffickers[2] traffic their victims. The

11   advertisements of M.L. appeared in craigslist's "erotic services" subcategory, a section

12   that craigslist maintained for over ten years. Dkt. 187, ¶¶ 46, 71. Buyers and sellers were

13   connected through an embedded email system which allowed both parties to remain

14   anonymous. *Id.* ¶ 47. M.L. alleges that craigslist was aware by at least 2009 that its

15   website was being used to advertise illegal sex trafficking and prostitution. *Id.* ¶ 49. M.L.

16   also alleges that craigslist benefited from this illegal activity because it charged a fee for

17   the advertisements and the advertisements helped its cash flow, credit ratings, and

18   competitive standing and created more traffic for its website generally. *Id.* ¶¶ 50–51.

19

---

20       [2] Plaintiff explains in her Second Amended Complaint that under federal law, the term
     "traffickers" includes those who provide individuals for sex work as well as those who solicit
21   and patronize forced sex work. Dkt. 187 at 17 & n.4. Thus, in this Order, the Court refers to both
     of these categories of individuals as "traffickers" except where it is necessary to distinguish
22   between the two groups.

Specifically, M.L. alleges that in 2008, craigslist "was on track to make $44,000,000.00 in fees from the erotic services section of its website before it was shut down later that year." *Id.* ¶ 52. She contends that craigslist "did nothing to verify the actual age of the person being advertised" or "to verify the actual identity of the posters[.]" *Id.* ¶ 68.

M.L. further argues that craigslist "provided a method for traffickers to arrange transportation and terms of purchase." *Id.* ¶ 65. When an individual created an "erotic services" post on craigslist, the website prompted the individual to select a geographic area and a type of commercial sex advertisement. *Id.* This allowed potential customers to filter the listings for the type of service they were seeking in their geographical location. *Id.* M.L. does not allege that any of the types of commercial sex advertisements explicitly related to children or sex trafficking or anything illegal.

Craigslist required that a post could not suggest sexual favors for money, but M.L. alleges that that rule was routinely circumvented by posts such as "200 INCALL SPECIAL" or "80 special all night" that craigslist did not investigate or remove. *Id.* ¶ 55. Craigslist did not ban use of terms such as "incall" and "outcall" which commonly designate where a commercial sex act would take place. *Id.* ¶ 56. Craigslist did not remove posts of M.L. which featured "a female figure in lingerie or in the nude (but cropped or [blurred]) and position[ed] in a sexually suggestive manner[.]" *Id.* ¶ 57. M.L. also alleges that craigslist marked the advertisements with the marking "Copyright © 2009, craigslist, inc." *Id.*

Craigslist took a variety of steps to increase security on its site. M.L. argues that those steps actually allowed traffickers to further obscure their own and their victims'

1    identities. M.L. alleges that craigslist's policy of requiring images to be blurred and

2    cropped and allowing traffickers to use aliases in their postings allowed traffickers to

3    "obscure the identity and age of M.L. and other trafficking victims[.]" *Id.* ¶¶ 60–61.

4    Similarly, M.L. alleges that craigslist's policy requiring posters to use a credit card and

5    telephone number to post was ineffective because traffickers would use pre-paid credit

6    cards and burner phones and craigslist "took no extra steps to acquire the actual identity

7    of those traffickers." *Id.* ¶ 62.

8         Craigslist stopped using the title "erotic services" in May 2009 and re-labeled it

9    "adult services." Dkt. 187, ¶ 72. Craigslist terminated the adult services section in 2010,

10   but M.L. claims that traffickers simply transitioned to advertising in craigslist's "personal

11   ads" and "massage services" sections—sections M.L. alleges traffickers had already been

12   using to advertise such services alongside their ads in the "erotic services" and "adult

13   services" sections. *Id.* Craigslist eliminated its personal ads sections completely in 2018.

14   *Id.* ¶ 73. M.L. alleges that craigslist "only chose to end its participation [in the sale and

15   trafficking of children for sex] once its liability for criminal and civil punishment became

16   certain" after the Fight Online Sex Trafficking Act and the Stop Enabling Sex Trafficking

17   Act ("FOSTA/SESTA") was passed in 2018. *Id.* ¶¶ 73–75.

18        M.L.'s trafficker paid to advertise her for sex services on craigslist when she was a

19   minor. The advertisements featured photographs of M.L. and stated that her name was

20   "Stacy" and that she was based in Lakewood. *Id.* ¶ 76. The advertisements also included

21   price information, using the term "hugs" instead of "dollars," and advertising M.L. for

22   "100 hugs hr" or "150 hugs hr." *Id.* M.L. contends that the posts complied with

craigslist's content requirements and also that, while it was clear from the photographs that she was a minor, craigslist did nothing to inquire about her age or status. *Id.* ¶¶ 76–77. Individuals responded to those advertisements and paid M.L.'s trafficker to sexually abuse M.L. *Id.* ¶ 79.

## B.   2005 Investors LLC

Defendant 2005 Investors LLC owned and operated the Howard Johnson Inn[3] in Kent, Washington where M.L. was trafficked from 2003–2015 and where she held for over one year from 2006–2007. *Id.* ¶¶ 184–85. M.L. asserts that she was "repeatedly assaulted and commercially sex trafficked at this location against her will." *Id.* ¶ 148(a). She claims that 2005 Investors allowed, authorized, permitted, induced, encouraged, and facilitated trafficking through its policies and procedures and failed to take appropriate action to prevent such trafficking. *Id.* ¶ 148(f). M.L. alleges she was forced to engage in thousands of commercial sex acts with hundreds of adult buyers during her time at the Howard Johnson in Kent. *Id.* ¶ 198.

When renting a hotel, M.L.'s trafficker would book a room with a pre-paid card, PayPal, or cash on websites like priceline.com or hotels.com to conceal his identity. *Id.* ¶ 205. Her trafficker would accompany her to the hotel, but they would not walk in together. *Id.* ¶ 206. M.L. would have little interaction with the front desk, and they would not verify her identification. *Id.* ¶ 209. Her trafficker would request a room or group of

---

[3] M.L. also occasionally posits that Wyndham owned and operated this hotel. *See, e.g.*, Dkt. 187, ¶ 148(a). Based on all of the facts presented, the Court's understanding is that Wyndham owns the Howard Johnson Inn franchise and that 2005 Investors was a franchisee that owned and operated the specific Howard Johnson location where M.L. was trafficked.

rooms near the back of the hotel for around a month and request two keys, and M.L. and other trafficking victims would not leave the hotel during these periods. *Id.* ¶¶ 207–08.

M.L. alleges that while she was continuously living at the hotel, when she was 14 to 16 years old, "motel staff spoke to M.L. more than once to keep her sexual activities more discrete, failing to report her trafficker, call the authorities, or otherwise prevent M.L. from being sold for sex as a child." *Id.* ¶ 185. Even after she was kicked out of the hotel, M.L. alleges she continued to be trafficked at the Howard Johnson until 2015. *Id.* ¶ 186.

M.L. argues that her sex trafficking should have been apparent to hotel staff because she looked very young; she was visited by many adult customers who stayed for 30 minutes to an hour; the customers parked in Howard Johnson's parking lot and walked through the hotel; there were large numbers of condoms, lube, and lotion in her room and unusual amounts of bodily fluids on linens and towels; she had to have her linens replaced multiple times per day because of body fluids; staff spoke to M.L. about keeping her sexual activity more discrete; and she had multiple contacts with police while staying at the Howard Johnson. *Id.* ¶¶ 190–97, 199–200. She also alleges that she would be aggressively and verbally assaulted, and motel staff ignored her pleas and screams for help. *Id.* ¶ 210. M.L. also argues that 2005 Investors had actual notice of her trafficking because it received complaints from neighbors, community members, law enforcement, parents, government officials, nonprofit organizations, and victims about trafficking occurring at the hotel. *Id.* ¶ 215.

## II.  PROCEDURAL HISTORY

M.L. sued Defendants craigslist, Inc., Craig Newmark, Jim Buckmaster, G6 Hospitality, LLC, Seatac Hotels, LLC d/b/a Motel 6, Wyndham Hotels and Resorts, Inc., and 2005 Investors LLC d/b/a Howard Johnson Inn in Pierce County Superior Court in July 2019.[4] Dkt. 1 at 1–2. She alleged eight causes of action under Washington State Law: (1) negligence; (2) outrage; (3) violations of Washington's Criminal Profiteering Act, RCW Ch. 9A.82, for promoting, assisting, and facilitating sex trafficking; (4) violations of Washington's Sexual Exploitation of Children Act ("SECA"), RCW Ch. 9.68A; (5) ratification and vicarious liability; (6) unjust enrichment; (7) civil conspiracy; and (8) violations of Washington's Criminal Profiteering Act, RCW Ch. 9A.82, for organizing, managing, directing, supervising, and financing criminal profiteering activity. *Id.* at 2. M.L. amended her complaint, adding a federal cause of action under the TVPRA, 18 U.S.C. §§ 1591, 1595. *Id.* Defendants then removed the action to this Court because M.L. had raised a federal question. *Id.* at 3.

Craigslist moved to dismiss, arguing that M.L.'s state claims were barred both by statutes of limitations and by the CDA, 47 U.S.C. § 230(c)(1), and that M.L. had failed to plead facts supporting necessary elements of all nine of her claims. Dkt. 37. Wyndham also moved to dismiss, arguing that M.L. had improperly relied on "shotgun pleading" such that the complaint did not provide the defendants fair notice of the claims against

---

[4] M.L. voluntarily dismissed Seatac Hotels, Dkts. 45, 46, 59, and G6 Hospitality, Dkt. 221.

1  them, that M.L. failed to state a claim under the TVPRA, and that none of the counts in

2  the complaint specifically indicated they were against Wyndham. Dkt. 38.

3      Judge Fricke recommended that the Court deny Wyndham's motion to dismiss,

4  dismiss counts 4 (SECA) and 5 (ratification and vicarious liability) against craigslist with

5  prejudice, dismiss counts 1 (negligence) and 6 (unjust enrichment) against craigslist with

6  leave to amend, and otherwise deny craigslist's motion to dismiss. Dkt. 62. The Court

7  adopted Judge Fricke's R&R. Dkt. 153.

8      M.L. moved to again amend her complaint in March 2021, arguing that she

9  discovered additional facts justifying amendment. Dkt. 166. Judge Fricke granted the

10  motion to amend. Dkt. 185. In her amended complaint, M.L. added claims for strict

11  liability and leading organized crime under the CPA and dropped her claims for

12  ratification/vicarious liability, unjust enrichment, and violations of the CPA for

13  organizing, managing, directing, supervising, and financing criminal profiteering activity.

14  Dkt. 187.

15      2005 Investors and craigslist moved for partial summary judgment, Dkts. 179

16  (2005 Investors), 180 (craigslist), and craigslist also moved to dismiss the second

17  amended complaint, Dkt. 200. Judge Fricke recommends that the Court grant in part and

18  deny in part all three motions. Dkts. 223 (motion for summary judgment R&R), 225

19  (motion to dismiss R&R). The specific recommendations are discussed in turn.

20                          **III.  DISCUSSION**

21      On dispositive matters, the district judge must determine de novo any part of the

22  magistrate judge's disposition that has been properly objected to. The district judge may

1    accept, reject, or modify the recommended disposition; receive further evidence; or return

2    the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). On non-

3    dispositive orders, the district judge in the case must consider timely objections and

4    modify or set aside any part of the order that is clearly erroneous or is contrary to law.

5    Fed. R. Civ. P. 72(a).

6    **A.    Motions to Strike**

7            Craigslist asked the Court to take judicial notice of the American Psychiatric

8    Associations Diagnostic and Statistical Manual of Mental Disorders, or DSM-V, in its

9    reply in support of its motion for summary judgment. Dkt. 198 at 8–9 n.4. Craigslist

10   sought to admit the DSM-V as evidence to rebut M.L.'s claim that she had a new injury

11   that would extend the limitations accrual date. *Id.* at 7–9. M.L. properly moved to strike

12   craigslist's reference to the DSM-V in a surreply to craigslist's motion. Dkt. 203. The

13   R&R recommends granting M.L.'s motion and striking craigslist's reference to the DSM-

14   V as well as the attachment to the Supplemental Declaration of Allison S. Blanco in

15   craigslist's reply. Dkt. 223 at 9–10.

16           Craigslist objects, arguing that the DSM-V was evidence needed to effectively

17   reply to new arguments M.L. raised in her response to craigslist's motion for summary

18   judgment. Dkt. 231 at 16. Craigslist also argues that the R&R should not have considered

19   M.L.'s surreply because it was filed late, and Judge Fricke did not afford craigslist an

20   opportunity to respond. *Id.* at 16 n.11. M.L. argues that the Court cannot properly

21   consider the DSM-V because M.L. was not given the opportunity to respond and a proper

22   response would necessitate testimony from an expert witness. Dkt. 236 at 16.

1    As an initial matter, M.L.'s surreply was not late. Under Local Civil Rule 7(g), a

2    party seeking to strike material "must file a notice of intent to file a surreply as soon after

3    receiving the reply brief as practicable" and "[t]he surreply must be filed within five days

4    of the filing of the reply brief." "Five days" refers to "five judicial days." *See Howell v.*

5    *Swedish Med. Ctr.*, No. 04-cv-1329 RSM, 2005 WL 2455020, at *2 (W.D. Wash. 2005).

6    Craigslist filed its reply on May 14, 2021—a Friday. *See* Dkt. 196. M.L. filed her notice

7    of intent to file a surreply, Dkt. 202, the following Wednesday (May 18, 2021), and filed

8    the surreply, Dkt. 203, on Friday (May 21, 2021)—five judicial days after craigslist's

9    reply. The surreply was timely.

10    Further, craigslist's references to the DSM-V were improper and are now moot.

11    The DSM-V is irrelevant to the limitations period questions currently before the Court.

12    The R&R did not rely on any "new" injuries to support its conclusion that questions of

13    fact remain on when M.L's claims accrued. M.L.'s motion to strike, Dkt. 203, is

14    GRANTED, the DSM-V IS STRICKEN, and the R&R is ADOPTED on that point.

15    M.L. also moves to strike craigslist's response, Dkt. 240, to her notice of

16    supplemental authority, Dkt. 239. Dkt. 242. Craigslist also responded twice more to other

17    supplemental authority M.L. filed. *See* Dkts. 245, 248. M.L. also included some

18    commentary in her submissions of supplemental authority. *See, e.g.*, Dkt. 239 at 1–2.

19    "Before the court rules on a pending motion, a party may bring to the court's attention

20    relevant authority issued after the date the party's last brief was filed . . . *without*

21    *argument*." W.D. Wash. LCR 7(n) (emphasis added). It was improper for either party to

22    submit argument on M.L.'s supplemental authority. Therefore, both parties' arguments

1  contained in that briefing is STRICKEN and M.L.'s motion to strike, Dkt. 242, is

2  GRANTED.

3  **B.    Motions for Summary Judgment**

4          2005 Investors and craigslist both move for summary judgment arguing that some

5  of M.L.'s claims are barred by the applicable limitations periods. 2005 Investors seeks

6  dismissal of (1) M.L.'s financial beneficiary claim under the TVPRA before December

7  23, 2008 or after August 2015; (2) M.L.'s negligence, civil conspiracy, and outrage

8  claims after ████████████; (3) M.L.'s CPA claim for conduct between ████████████ and

9  July 26, 2011 or after August 2015; and (4) M.L.'s claim under SECA for conduct after

10  ████████████. Dkt. 179 at 1–2. Craigslist seeks dismissal of M.L.'s "state law claims"[5] in

11  their entirety, arguing that they are time-barred. Dkts. 180, 196.

12          The R&R recommends the Court dismiss M.L.'s financial beneficiary claim based

13  on the TVPRA for conduct occurring prior to December 23, 2008, limit M.L.'s claim for

14  attorney fees and costs under SECA to conduct occurring prior to M.L.'s eighteenth

15  birthday, and dismiss M.L.'s claims against 2005 Investors for conduct occurring at the

16  Howard Johnson after August 31, 2015. Dkt. 223. M.L. did not object to those

17  recommendations, and thus they are ADOPTED.

18  _____

19          [5] Craigslist concludes its motion by asking the Court to "enter final judgment in
craigslist's favor" on Counts 2, 3, 7, 8. Dkt. 180 at 24. Based on the operative complaint at the
20  time, those claims are: (2) outrage, (3) Criminal Profiteering Act, (7) civil conspiracy, and (8)
Criminal Profiteering Act. *See* Dkt. 1-2 at 65–70. Between the time craigslist filed its motion for
summary judgment and its reply, M.L. filed an amended complaint which re-asserted the
21  negligence claim that was previously dismissed. Dkt. 187. Craigslist argues in its reply that
M.L.'s negligence claim is barred by the same limitations periods as her other state law claims.
22  Dkt. 196.

The R&R also recommends that the Court deny 2005 Investors' motion for summary judgment on M.L.'s remaining claims because there are questions of fact regarding when M.L.'s claims accrued. *Id.* at 2. 2005 Investors objects, arguing that all state law claims occurring after M.L.'s eighteenth birthday should be dismissed because there is no discovery rule that would toll the limitations period or delay the accrual of her claim. Dkt. 229 at 2–7. It also objects to the extent that the R&R recommends preserving M.L.'s claims under the CPA because it argues those claims are also time-barred. *Id.* at 7.

The R&R recommends that the Court deny craigslist's motion for partial summary judgment because questions of fact remain as to when M.L.'s claims accrued. Dkt. 223 at 2–3. Craigslist objects, arguing that the R&R reached the wrong conclusion, in part because it misallocated the burden of proof to craigslist. Dkt. 231 at 5–6.

**1.      Motion for Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

1  presents a sufficient disagreement to require submission to a jury or whether it is so one-

2  sided that one party must prevail as a matter of law." *Id*. at 251–52.

3        The moving party bears the initial burden of showing that there is no evidence

4  which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*,

5  477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party

6  then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

7  nonmoving party fails to establish the existence of a genuine issue of material fact, "the

8  moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

9  There is no requirement that the moving party negate elements of the non-movant's case.

10 *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met

11 its burden, the non-movant must then produce concrete evidence, without merely relying

12 on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477

13 U.S. 242, 248 (1986).

14     **2.**    **State Law Claims Based on Events that Occurred While M.L. was a Minor.**

15       The R&R recommends that the Court deny craigslist's motion for summary

16 judgment on M.L.'s state law claims[6] arising prior to ████████—M.L.'s eighteenth

17 birthday—because questions of fact remain as to when M.L. discovered the connection

18

19 _____

20       [6] It is somewhat unclear whether craigslist intends to object to the R&R's recommendations as to M.L.'s CPA claims, which are also state law claims, or just her state tort

21 claims. The Court interprets craigslist's objections as only addressing the common law tort claims and not the CPA claims because that is what is squarely addressed in craigslist's objections. Nevertheless, the limitations period for M.L.'s CPA claims is also discussed in detail

22 below.

1   between craigslist's alleged conduct and M.L.'s alleged injuries. Dkt. 223 at 24.

2   Craigslist objects, arguing that M.L. discovered the causal connection between her

3   injuries and the abuse she suffered by at least ███ and that she did not experience a new

4   injury caused by the abuse since the time of her childhood sexual abuse. Dkt. 231 at 12–

5   16. M.L. argues that medical records and her own testimony corroborate her argument

6   that she did not understand she was a victim of sex trafficking, she did not understand

7   craigslist's or other defendants' involvement in her sex trafficking, and she did not

8   connect her symptoms to her sex trafficking until at least 2017. Dkt. 236 at 10–13.

9        Under Washington law, the three-year statute of limitations for childhood sexual

10   abuse claims are tolled until the victim reaches the age of eighteen. RCW 4.16.340(1).

11   The claims accrue as follows:

12        (1) All claims or causes of action based on intentional conduct
     brought by any person for recovery of damages for injury suffered as a
13        result of childhood sexual abuse shall be commenced within the later of the
     following periods:
14        (a) Within three years of the act alleged to have caused the injury or
     condition;
15        (b) Within three years of the time the victim discovered or
     reasonably should have discovered that the injury or condition was caused
16        by said act; or
        (c) Within three years of the time the victim discovered that the act
17        caused the injury for which the claim is brought:
        PROVIDED, That the time limit for commencement of an action
18        under this section is tolled for a child until the child reaches the age of
     eighteen years.

19
     *Id.* It is undisputed that M.L.'s claims arising prior to her eighteenth birthday were tolled
20
     until she turned eighteen on ████████ . ████████████████████
21

22

1  ██████████████████ ████████. *See* Dkt. 1 at 2. Therefore, the remaining

2  question is when M.L.'s claims accrued later under RCW 4.16.340(1)(c).

3  　　　The parties disagree as to whether the claim against craigslist accrued when M.L.

4  discovered that her trafficking caused her injuries or when M.L. discovered that

5  craigslist's involvement in her trafficking caused her injuries.[7] Craigslist argues it is the

6  former, relying on a 2019 Ninth Circuit case, *A.T. v. Everett School District*, 794 F.

7  App'x 601 (9th Cir. 2019). In that case, the Ninth Circuit held that under RCW 4.16.340,

8  all claims arising from the trafficking, including any third-party negligence claims,

9  accrue at the time the victim makes a causal connection between the trafficking and her

10  injuries. *A.T.*, 794 F. App'x at 604. M.L., on the other hand, argues that it is the latter,

11  relying on an unpublished 2015 Washington Court of Appeals case, *Kirchoff v. City of*

12  *Kelso*, 190 Wn. App. 1032 (2015). In that case, the Court of Appeals held that third party

13  negligence claims arising under RCW 4.16.340 accrue when the victim discovers the

14  causal connection between the third party's alleged negligence and her injuries. *Kirchoff*,

15  190 Wn. App. 1032 at *4–5.[8]

16

17

---

18  　　　[7] While the Court acknowledges that the parties disagree as to which party bears the
19  burden of proof, the Court will not address the burden of proof issue in full at this time.
Regardless of who ultimately bears the burden, M.L. has provided evidence demonstrating that
questions of fact remain as to when the limitations period accrued.

20  　　　[8] Notably, this question also appears to be at issue in a case currently before the
Washington Court of Appeals, *Wolf v. Washington*, No. 559641-II. *See* Brief of Appellant, *Wolf*
21  *v. Washington*, 2021 WL 6200572 (Wash. App. Sept. 2, 2021); Brief of Respondent, *Wolf v.*
*Washington*, 2021 WL 6200574 (Wash. App. Dec. 3, 2021). The case is set for oral argument on
22  May 9, 2022.

1      Washington courts are the primary authority for interpretation of Washington law.

2  While *Kirchoff* is unpublished, it relies soundly on a published case, *C.J.C. v.*

3  *Corporation of Catholic Bishop of Yakima*, in which the Washington Supreme Court

4  reviewed the legislative history of RCW 4.16.340, explained that the statute's discovery

5  rule was purposely "broad and generous" for victims of childhood sexual abuse, and held

6  that third party negligence is an appropriate cause of action under the statute. 138 Wn.2d

7  699, 711–14 (1999) (en banc). The state supreme court held that the statute did not limit

8  the parties who may sue under the act, but only the "predicate sexual *conduct* upon which

9  all claims or causes of actions must be based." *Id.* at 711–12 (emphasis in original). That

10  holding and discussion led the Court of Appeals in *Kirchoff* to conclude that the language

11  in RCW 4.16.340 required that a claim against a third-party be based on predicate illegal

12  conduct, but that the third-party negligence claim accrues when "the victim makes a

13  causal connection between [the] third-party's negligent failure to protect and [her]

14  injury." 190 Wn. App. 1032 at *4.

15      At first glance, it is possible to conclude that the statute's language is ambiguous

16  in that it refers to "the act" multiple times and it is unclear whether that "act" must be the

17  criminal offense itself or the act causing the specific injury at issue in the relevant cause

18  of action. But it follows from *C.J.C.* that the "act alleged to have caused the injury or

19  condition" referred to in subsection (1)(a), and referred back to in subsections (1)(b) and

20  (1)(c), must refer to the act causing the specific injury at issue in the cause of action at

21  hand. *See* RCW 4.16.340(1)(a). That "act" triggers the statute of limitations. Interpreting

22  the statute otherwise would seem to imply that no third-party negligence cause of action

1   is available under the statute, which would directly contradict the Washington Supreme

2   Court's holding in *C.J.C.*

3        The Court of Appeals' interpretation also aligns with the legislative history and

4   legislative findings. *C.J.C.* pointed out that "the Legislature specifically provided for a

5   broad and generous application of the discovery rule to civil actions for injuries caused

6   by childhood sexual abuse." 138 Wn. 2d at 712. Similarly, the legislative findings state

7   that "the earlier discovery of less serious injuries should not affect the statute of

8   limitations for injuries that are discovered later." RCW 4.16.340, Official Note § 212(6)

9   (1991). Thus, the relevant question is when M.L. was aware of the alleged connection

10  between craigslist's acts and her injuries.

11       Moreover, even if the interpretation of the statute in *A.T.* was correct, the Court

12  agrees with the R&R that this case is distinguishable from *A.T.* The R&R effectively

13  explained the relevant factual differences between the two cases and the Court need not

14  repeat it, *see* Dkt. 223 at 18–24, except to say that there is sufficient evidence to create an

15  issue of fact whether M.L. was unaware of the causal connection between the abuse she

16  experienced and her injuries until her trafficking ended and she was able to receive

17  therapeutic assistance.

18       Therefore, craigslist's objections are OVERRULED, the R&R is ADOPTED as to

19  M.L.'s state claims arising prior to her eighteenth birthday, and craigslist's motion for

20  summary judgment on this point is DENIED.

21

22

1        **3.      State Law Claims After M.L.'s Eighteenth Birthday**

2        The R&R recommends that the Court deny the motions to dismiss M.L.'s state law

3   claims arising after her eighteenth birthday. Dkt. 223 at 14–16. 2005 Investors argues that

4   the Court should dismiss M.L.'s state law claims occurring after her eighteenth birthday

5   because Washington's discovery rule for sexual abuse only applies to childhood sexual

6   abuse, M.L. was aware of all facts giving rise to her claims at least by ███ and the

7   continuing violation doctrine does not apply. Dkt. 229 at 3–7. These are largely the same

8   arguments 2005 Investors made in support of its motion for summary judgment. *See*

9   Dkts. 179 (motion), 193 (reply). Craigslist argues that the R&R erroneously placed the

10  burden to prove the claims were not tolled on craigslist and that the discovery rule does

11  not apply because M.L. knew or should have known all relevant facts. Dkt. 231 at 9–12.

12  M.L. argues that the R&R correctly assigned the burden of proof to Defendants and that

13  her claims arising after her eighteenth birthday are timely because she did not discover

14  the facts underlying her claims until 2017 at the earliest. Dkt. 236 at 9–10, 13–15.

15       The relevant statute of limitations is three years. *See* RCW 4.16.080(2); *Cox v.*

16  *Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 192 (2009) (outrage); *Walker v.*

17  *Orkin, LLC*, 10 Wn. App. 2d 565, 567 (2019) (negligence). "Generally, the statute of

18  limitations begins to run at the time the act or omission causing the tort injury occurs."

19  *Ohnemus v. Washington*, 195 Wn. App. 135, 143 (2016) (internal quotation omitted).

20  Certain causes of actions, however, do not accrue until the complaining party "discovers"

21  the basis for the cause of action. In Washington, there is a statutory discovery rule for

22

1  victims of childhood sexual abuse and a common law discovery rule for other causes of

2  action.

3         In Washington, all claims brought "for recovery of damages for injury suffered as

4  a result of *childhood sexual abuse* shall be commenced within . . . three years of the time

5  the victim discovered or reasonably should have discovered the injury or condition was

6  caused by said act." RCW 4.16.340(1)(b) (emphasis added). Childhood sexual abuse is

7  defined as "any act committed by the defendant against a complainant who was *less than*

8  *eighteen years of age* at the time of the act[.]" RCW 4.16.340(5) (emphasis added).

9  Washington's statutory discovery rule for childhood sexual abuse thus does not apply to

10  any claims arising after M.L. turned eighteen—███████. The question, therefore,

11  is whether Washington's common law discovery rule applies.

12         "Under Washington's [common law] discovery rule, a cause of action does not

13  accrue until a party knows or reasonably should have known the essential elements of the

14  possible cause of action." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 602

15  (2005). The plaintiff is required to exercise reasonable diligence in pursuing a claim, and

16  if the plaintiff "is placed on notice by some appreciable harm occasioned by another's

17  wrongful conduct, the plaintiff must make further diligence inquiry to ascertain the scope

18  of the actual harm." *Green v. A.P.C. (Am. Pharm. Co.)*, 136 Wn.2d 87, 96 (1998) (en

19  banc). The plaintiff does not have to be on notice that the relevant facts are sufficient to

20  establish a cause of action. *Ohnemus*, 195 Wn. App. at 143. Whether the plaintiff

21  exercised due diligence is normally a factual question, "but can be determined as a matter

22  of law when reasonable minds could reach only one conclusion." *Id.* (citation omitted).

1    2005 Investors argues that the common law discovery rule does not apply in this

2    case because it "has never been extended to sexual abuse claims arising from events in

3    adulthood." Dkt. 229 at 4. It argues that *Ohnemus* goes directly against the relief sought

4    in this case because it only evaluated childhood sexual abuse claims and it did not

5    determine that the claims triggered the discovery rule. *Id.* But the Washington Court of

6    Appeals seems to acknowledge in *Ohnemus* that the common law discovery rule could

7    apply to claims based on childhood sexual abuse. It is unclear why it could not then also

8    apply to adult sexual abuse. While it is true the Court of Appeals did not ultimately apply

9    the discovery rule in that case, the reasoning was that the plaintiff had failed to "exercise

10    due diligence when she knew or should have known the factual basis for her cause of

11    action." *Ohnemus*, 195 Wn. App. at 143.

12    2005 Investors and craigslist also argue that M.L. knew the pertinent facts more

13    than three years before this case was filed, or at the very least knew enough facts to

14    require her to exercise due diligence. Dkt. 229 at 4–6; Dkt. 231 at 10–12. M.L. argues

15    that she did not understand the role craigslist and 2005 Investors played in her sexual

16    abuse until after her trafficking ended, at the very earliest in 2017. Dkt. 236 at 13–15. She

17    argues that she was unable to understand that she was a victim of sex trafficking until she

18    was able to escape her traffickers and receive counseling. *Id.*

19    The Court agrees with the R&R; the common law discovery rule applies and

20    whether M.L. exercised due diligence is a question of fact that the Court cannot

21    determine on this summary judgment record. M.L. presented sufficient evidence to create

22    a question of fact as to whether she knew or should have reasonably known the factual

1   basis for her claims. Therefore, the parties' objections are OVERRULED, the R&R is

2   ADOPTED as to M.L.'s state claims arising after her eighteenth birthday and 2005

3   Investors' and craigslist's motions to dismiss are DENIED. Those claims survive against

4   craigslist and 2005 Investors, though the claims against 2005 Investors are limited to

5   those arising prior to August 31, 2015.[9]

6   **4.      Criminal Profiteering Act**

7          The R&R recommends that the Court deny the Defendants' summary judgment

8   motions on M.L.'s CPA claims because the parties dispute when M.L. discovered

9   relevant facts and thus questions of fact remain on whether her CPA claims are time-

10  barred. Dkt. 223 at 24–26.

11         2005 Investors objects, arguing that M.L.'s CPA claims are time-barred because

12  the CPA statute of limitations "is contingent on discovery of the criminal acts themselves,

13  not discovery of any damages flowing therefrom." Dkt. 229 at 7 (emphasis omitted). This

14  is the same argument 2005 Investors advanced in its reply[10] in support of its motion for

15  summary judgment. Dkt. 193 at 7–9 ("[The CPA's discovery rule] relates to the

16  discovery of *criminal activity*; not the discovery of damages arising therefrom."

17  (emphasis in original)). M.L. argues that questions of fact remain as to when she

18

19  _____

20  [9] 2005 Investors sold its interest in Howard Johnson on August 31, 2015. *See* Dkt. 223 at 2.

21  [10] 2005 Investors did not advance this argument in its motion for summary judgment, seemingly because it was not aware that the CPA included a statute of limitations until M.L. cited the provision in her response. *See* Dkt. 179 at 7 n.2 (noting that no court had yet declared the applicable statute of limitations for CPA claims).

22

1  discovered or reasonably should have discovered the role craigslist and 2005 Investors

2  played in the alleged criminal profiteering activity. Dkt. 236 at 15–16.

3      A proper objection requires specific written objections to the findings and

4  recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

5  Cir. 2003) (en banc). Objections to a R&R are not a vehicle to relitigate the same

6  arguments carefully considered and rejected by the Magistrate Judge. *See, e.g.*, *Fix v.*

7  *Hartford Life & Accident Ins. Co.*, CV 16-41-M-DLC-JCL, 2017 WL 2721168, at *1 (D.

8  Mont. June 23, 2017) (collecting cases). Objections to a Magistrate's Report and

9  Recommendations are not an appropriate vehicle to rehash or re-litigate the points

10  considered and resolved by the Magistrate Judge. *See, e.g.*, *El Papel LLC v. Inslee*, No.

11  2:20-cv-01323 RAJ-JRC, 2021 WL 71678, at *2 (W.D. Wash. Jan. 8, 2021) ("Because

12  the Court finds that nearly all objections are merely a rehash of arguments already raised

13  and decided upon by the Magistrate Judge, the Court will not address each objection

14  here."). 2005 Investors raises the same argument it raised in its reply brief and was

15  carefully considered by Judge Fricke. Dkt. 193 at 7–9; Dkt. 223 at 24–26.

16      Moreover, the Court agrees with the R&R. The relevant limitations period requires

17  that a plaintiff initiate civil proceedings "within three years after discovery of the pattern

18  of criminal profiteering activity or after the pattern should reasonably have been

19  discovered, or in the case of [a trafficking offense], within three years after the final

20  disposition of any criminal charges relating to the offense, whichever is later." RCW

21  9A.82.100(7). The Court is not aware of any case law or other guidance analyzing how to

22

1    interpret and apply this provision.[11] While some statutes of limitations focus on when a

2    victim discovers their damages were caused by the unlawful acts, *see, e.g.*, RCW

3    4.16.340(1)(b), the plain language of this statute suggests the action accrues when a

4    victim discovers of the facts of the profiteering scheme. To that extent, the Court agrees

5    with 2005 Investors.

6         Nevertheless, the Court agrees with the R&R that questions of fact remain as to

7    when M.L. discovered the facts she now alleges. ████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ████████████████████. It does seem as though M.L. knew to some extent that ████████████

12   had advertised her services on craigslist and that she was being held in certain hotels, but

13   there are many facts relevant to her CPA claims that she may not have known. While her

14   alleged contact with hotel staff acknowledging her sexual activities makes this a close

15   call as to 2005 Investors, drawing all inferences in M.L.'s favor, questions of fact remain

16   as to when she discovered or should have discovered the relevant facts.

17

18   _____

19        [11] The Court has treated the CPA's limitations period the same as other Washington
     limitations periods without analyzing the issue, stating that all of the limitations periods in the

20   case began to run "when a plaintiff discovers, or in the exercise of reasonable diligence should
     have discovered the facts which give rise to his or her cause of action." *Malone v. Clark Nuber,
     P.S.*, No. 07-cv-2046 RSL, 2008 WL 2545069, at *7–8 (W.D. Wash. June 23, 2008) (internal

21   quotation omitted). Even if the statute of limitations were interpreted in that way, M.L.'s CPA
     claims would still survive because a question of fact remains as to when she discovered or should

22   have discovered the relevant facts.

1    Therefore, the Court agrees with the R&R that questions of fact remain regarding

2    when M.L. discovered, or should have discovered, relevant facts related to her CPA

3    claims. 2005 Investors' and craigslist's objections are OVERRULED, the R&R is

4    ADOPTED on M.L.'s state law claims arising after her eighteenth birthday, and the

5    parties' motions for summary judgment are DENIED for those claims.

6    **C.    Craigslist's Motion to Dismiss**

7    Craigslist moves to dismiss M.L.'s negligence, strict liability, CPA, leading

8    organized crime, and SECA claims arguing that the claims are barred by § 230 of the

9    CDA and that M.L. failed to state a claim for each. Dkt. 200. The R&R recommends that

10   the Court dismiss M.L.'s negligence and strict liability claims against craigslist as barred

11   by § 230 of the CDA.

12   M.L. objects, arguing that craigslist is a content creator under the CDA and is

13   therefore not entitled to immunity under § 230. Dkt. 233. She also alternatively asks the

14   Court to grant her leave to adequately plead her negligence and strict liability claims. *Id.*

15   at 14. Craigslist responds that the R&R correctly held that it acted as a publisher, not a

16   content creator, and is therefore immune under § 230. Dkt. 234.

17   The R&R also recommends dismissing M.L.'s CPA claim against craigslist to the

18   extent it relies on offenses of trafficking, promoting commercial sexual abuse of a minor,

19   leading organized crime, use of proceeds of criminal profiteering, sexual exploitation of a

20   minor, dealing in depictions of minors engaged in sexually explicit conduct, or

21   sending/bringing into state depiction of minor engaged in sexually explicit conduct. M.L.

22   objects only to the recommended dismissal of her leading organized crime claim. Dkt.

233 at 14–15. The other recommended dismissals are therefore ADOPTED, and those claims are DISMISSED with prejudice.[12]

The R&R recommends the Court deny craigslist's motion to dismiss M.L.'s CPA claim to the extent it relies on offenses of promoting prostitution in the first degree or promoting prostitution in the second degree. Craigslist objects, arguing that it is entitled to CDA immunity on those claims and also that M.L. failed to plausibly allege craigslist knowingly advanced or shared in the proceeds of M.L.'s prostitution. Dkt. 232.

### 1.    Motion to Dismiss Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

---

[12] 2005 Investors did not file a motion to dismiss these claims.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555.).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

### 2.   Communications Decency Act

The Court previously dismissed M.L.'s negligence claim for failure to state a claim but granted her leave to amend. Dkt. 62 at 27–30 (R&R); Dkt. 153 at 18 (Order adopting R&R). She amended her negligence claim and added a strict liability claim. *See* Dkt. 187. The R&R recommends that the Court dismiss M.L.'s negligence and strict liability claims as barred by § 230 of the CDA. Dkt. 225 at 1–2.

M.L. objects, arguing that Judge Fricke's recommendation is inconsistent with prior orders in this case, that craigslist is not entitled to CDA immunity on these claims, and that Judge Fricke misconstrued the Ninth Circuit's recent holding in *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021). Dkt. 233.

1

**a.     The R&R is consistent with prior orders.**

2

M.L. first argues that Judge Fricke's R&R is inconsistent with this Court's prior

3

order. Judge Fricke's prior R&R, Dkt. 62, and the Court's Order adopting it, Dkt. 153,

4

are consistent with the instant R&R. In the prior R&R, Judge Fricke recommended that

5

the Court not dismiss all of M.L.'s state law claims against craigslist because it was not

6

clear that craigslist was entitled to § 230 immunity for *all* of the claims.[13] Dkt. 62 at 27.

7

While Judge Fricke recommended dismissing M.L.'s negligence claim against craigslist

8

for failure to state a claim, she also posited that craigslist would nonetheless be entitled to

9

§ 230 immunity on that claim as pled because M.L. sought "to hold craigslist liable for

10

negligence for failing to monitor its website and for failing to take affirmative steps to

11

prevent sex trafficking on [its] website." *Id.* at 29. Judge Fricke suggested that such

12

allegations were barred by the CDA "because monitoring and removing content is the

13

function of a publisher, not a content creator." *Id.* at 29–30 (internal citations omitted).

14

The Court's Order adopting the R&R addressed craigslist's objection to the

15

R&R's recommended denial of its motion to dismiss *all* of M.L.'s state law claims

16

against craigslist based on § 230 immunity. It explained that "Plaintiff has alleged enough

17

facts to plausibly state a claim that craigslist was responsible, in whole or in part, for the

18

development or creation of the unlawful advertisements which trafficked Plaintiff." Dkt.

19

20

21

22

---

[13] An internet service provider can have § 230 immunity for some claims or activities and not others. *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1172–75 (9th Cir. 2008) (en banc) (holding website did not have immunity for discriminatory content it prompted but retained immunity for generally asking users to provide additional comments without telling them what they should include).

153 at 8. The Court adopted Judge Fricke's R&R and did not dismiss all of M.L.'s state law claims for § 230 immunity. It did dismiss M.L.'s as-pled negligence claim for failure to state a claim. The Court did not intend to rule on § 230 immunity in relation to M.L.'s negligence claim, and M.L.'s strict liability claim was not yet before the Court.

Judge Fricke now recommends dismissing M.L.'s negligence and strict liability claims against craigslist as barred by § 230 immunity. Dkt. 225 at 9–13. She does not recommend dismissing all of M.L.'s state law claims for § 230 immunity. Thus, her recommendation is completely consistent with both her prior R&R and with this Court's Order adopting it. Judge Fricke previously signaled to M.L. the § 230 immunity problem with her negligence claim against craigslist, and M.L. failed to cure that problem in her second amended complaint. Moreover, the Ninth Circuit has further clarified the parameters of § 230 immunity since this Court adopted the prior R&R. *See, e.g.*, *Gonzalez*, 2 F.4th at 893–98.

### b.   Craigslist is entitled to CDA immunity.

"Section 230(c)(1) of the CDA only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (internal quotation omitted); *see also* 47 U.S.C. § 230(c)(1). An interactive computer service provider acts as a developer rather than a publisher or speaker, and thereby does not qualify for § 230 immunity, "if it contributes materially to the alleged illegality of the conduct." *Roommates.com*, 521 F.3d at 1168. It is undisputed that craigslist is a provider of an interactive computer service.

1   M.L. argues that craigslist is not immune under § 230 because she "seeks to hold

2   craigslist liable for its material contribution to the creation and development of illegal sex

3   trafficking advertisements[.]" Dkt. 233 at 8. M.L. advances the same argument previously

4   considered and rejected by Judge Fricke. *See* Dkt. 225 at 9 ("[T]he Communications

5   Decency Act bars plaintiff's negligence claim against craigslist, because it seeks to hold

6   craigslist, an interactive computer service provider, liable as the publisher of third-party

7   content."); *id.* at 13 ("[P]laintiff's strict liability claim fails to allege that craigslist

8   materially contributed to the creation of the illegal content and seeks to hold craigslist

9   liable for publishing third party content.").

10   Moreover, the Court agrees with the R&R on this point and neither the

11   supplemental authority M.L. submitted, nor M.L.'s analysis of *Gonzalez*, changes the

12   analysis. Each supplemental authority is discussed briefly in turn.

13   As an initial matter, none of the submitted cases are binding on this Court, and two

14   of the cases are from the Seventh Circuit, which has deviated from the majority of circuit

15   courts, including the Ninth Circuit, on § 230 immunity. *Webber v. Armslist LLC* explains

16   this circuit split and demonstrates why that split is critical in a case like this. No. 20-C-

17   1526, 2021 WL 5206580, at *13–21 (E.D. Wis. Nov. 9, 2021); *see also* Dkt. 244-1.

18   In *Webber*, the Eastern District of Wisconsin explained that the Seventh Circuit

19   has interpreted § 230 not as a provision granting internet service providers immunity but

20   rather as definitional only. According to the Seventh Circuit, that provision "'limits who

21   may be called the publisher [or speaker] of information that appears online,' and while

22   that 'might matter to liability for defamation, obscenity, or copyright infringement,' that

1    does not necessarily mean it will have a role to play in all cases." *Id.* at \*15 (quoting *City*

2    *of Chicago, Ill. v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010)) (alteration in

3    original). The Eastern District of Wisconsin therefore concluded that § 230 did not apply

4    to the case at all because the only claims at issue were negligence, negligence per se,

5    public nuisance, civil conspiracy, wrongful death, a survival action, and piercing the

6    corporate veil. *Id.* at \*21. This interpretation differs significantly from other circuits,

7    including the Ninth Circuit, which have repeatedly held that § 230 provides broad

8    immunity for internet service providers. *See, e.g.*, *Roommates.com*, 521 F.3d at 1174

9    ("close cases . . . must be resolved in favor of immunity[.]").[14]

10          The other Seventh Circuit case, *Bonilla v. Ancestry.com Operations Inc.*, differs

11    significantly from the case at hand. No. 20-C-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7,

12    2021); *see also* Dkt. 243-1. There, Ancestry.com was using individuals' names,

13    likenesses, and photos without their permission for a subscription "yearbook" service that

14    allowed subscribers to access data gathered from yearbooks and aggregated into digital

15

---

16          [14] *See also, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 415 (1st Cir. 2007) ("In Section 230 of the Communications Decency Act . . . Congress has granted broad immunity to entities . . . that facilitate the speech of others on the Internet."); *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) ("In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity."); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) ("Congress considered the weight of the speech interests implicated and chose to immunize service providers[.]"); *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content."); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014) ("[C]ourts have construed the immunity provisions in § 230 broadly . . . . [And] close cases must be resolved in favor of immunity") (internal quotations and citations omitted); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) ("The majority of federal circuits have interpreted [Section 230] to establish broad [] immunity[.]").

1   records on its website. *Id.* at *3. The site offered a free trial that would give potential

2   subscribers "hints" of users Ancestry believed may be related to them. *Id.* The Northern

3   District of Illinois held that the plaintiff sufficiently alleged that Ancestry.com acted as

4   more than a publisher because it was taking content, re-organizing it, and sending it out

5   to potential subscribers. *Id.* at *12–14. In contrast, M.L. does not allege that craigslist

6   altered or redistributed any content on its website.

7        In *Doe v. Mindgeek USA Inc.*, an individual sued Pornhub after her ex-boyfriend

8   posted videos of them having sex when she was sixteen on the website, and Pornhub

9   asserted it had § 230 immunity. No. SACV 21-00338-CJC (ADSx), 2021 WL 5990195,

10  at *2–3 (C.D. Cal. Dec. 2, 2021); *see also* Dkt. 239-1. After extensively analyzing Ninth

11  Circuit case law and the instant R&R in that case, the court denied Pornhub CDA

12  immunity. *Mindgeek*, 2021 WL 5990195, at *3–7. Specifically, the court pointed out that

13  Pornhub had materially contributed to the illegal content uploaded by, *inter alia*,

14  categorizing videos with coded language for child pornography, instructing users how to

15  target individuals seeking child pornography, encouraging child pornography through

16  targeted playlists on its platforms with titles like "less than 18" and "underage," and

17  uploading child pornography itself. *Id.* at *6. The Northern District of Alabama reached a

18  similar conclusion on similar facts. *See Doe #1 v. MG Freesites, LTD*, No. 7:21-cv-

19  00220-LSC, 2022 WL 407147, at *15–17 (N.D. Ala. Feb. 9, 2022); *see also* Dkt. 247-1.

20       In additional to supplying the above supplemental authority, M.L. argues that the

21  R&R "misconstrues" *Gonzalez* and asserts that case "does not compel the conclusion that

22  [c]raigslist was a publisher in this case." Dkt. 233 at 12. While the Court agrees that

1    *Gonzalez* does not necessarily compel any conclusion in this case, it does provide helpful

2    guidance.

3           In *Gonzalez*, multiple plaintiffs sought to hold Google, Twitter, and Facebook

4    liable for murders perpetrated by the terrorist group ISIS. 2 F.4th at 879–80. Specifically,

5    the plaintiffs alleged that "Google placed paid advertisements in proximity to ISIS-

6    created content and shared the resulting ad revenue with ISIS." *Id.* at 880. The Ninth

7    Circuit held that § 230 barred the claims against Google because Google provided a

8    neutral platform and did not prompt the type of content submitted or determine the

9    content its algorithms would promote. *Id.* at 895.

10          Along with *Gonzalez*, two other Ninth Circuit cases frame the § 230 issue in this

11   case and lead the Court to its ultimate conclusion. First, in *Dyroff v. Ultimate Software*

12   *Grp., Inc.*, the plaintiff sued the operator of a website called the Experience Project,

13   which was a social networking website that allowed users to anonymously post about

14   their experiences, ask and answer questions, and interact with other users. 934 F.3d 1093,

15   1094 (9th Cir. 2019). The site did not promote or limit the topics users could talk about,

16   instead it acted as a "blank box" forum. *Id.* Some users used the site to sell and purchase

17   drugs, including the plaintiff's son who ultimately died from fentanyl poisoning from the

18   drugs he purchased on Experience Project. *Id.* at 1095. The court held that the website

19   merely provided neutral tools and did not materially contribute to the unlawfulness of the

20   posted content. *Id.* at 1099–1100.

21          In *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,

22   Roommates.com operated a website that attempted to match users with suitable

roommates. 521 F.3d at 1161. The site required users to disclose their sex, sexual

orientation, and whether they would be living with children and also allowed them to

provide "Additional Comments" in an open-ended format. *Id.* The Ninth Circuit held that

Roommates.com was not immune under § 230 for the required questionnaire because it

required users to answer questions that directly contributed to the unlawful conduct—

housing discrimination on the basis of sex, sexual orientation, or familial status. *Id.* at

1165. Roommates.com was, however, immune for its "Additional Comments" section.

*Id.* at 1173–75. Notably, the Ninth Circuit likened craigslist's website to the "Additional

Comments" section of Roommates.com' website, explaining that "users are given an

open text prompt . . . without any structure imposed on their content or any requirement

to enter discriminatory information[.]" *Id.* at 1172 n.33.

M.L. alleges that craigslist materially contributed to the illegal content in the

following ways: providing "terms of use" that "assisted in the creation and development

of the content and format of the advertisements," requiring the poster to designate a

location, requiring the poster to pay a fee, providing a subsection on its website titled

"erotic services" and later "adult services," providing an embedded email system to allow

traffickers to communicate with customers, allowing use of popular codes for commercial

sex acts, failing to remove unlawful posts, stamping each advertisement with its

copyright, requiring explicit images to be blurred or cropped, allowing posters to remain

anonymous, requiring posters to use their credit card and telephone numbers, providing a

search bar and allowing users to filter by geographic area, failing to verify the identity of

posters, and failing to verify the age of the person being advertised. *See* Dkt. 187 at 21–37.

M.L.'s allegations seek to hold craigslist liable as a publisher or speaker of a third party's content. Unlike in *Roommates.com*, nothing in craigslist's terms of use or on its website required or even prompted posters to post unlawful content. The closest thing to prompting unlawful content is the subsection title "erotic services." But erotic services include lawful content, such as erotic dancing. *See Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 968 (N.D. Ill. 2009) (noting that "[a] woman advertising erotic dancing for male clients" could be posted in craigslist's "adult services" section but did not constitute prostitution). Further, providing neutral tools, such as geographic filters, a search bar, and an embedded messaging system does not turn craigslist into a content creator or developer. *See Gonzalez*, 2 F.4th at 895. Failing to remove posts or verify identities is also insufficient. *See Dyroff,* 934 F.3d at 1099–1100.  It is unclear how the remaining factors, such as stamping posts with its copyright and requiring posters to use a credit card, could transform craigslist into a content creator.[15]

---

[15] M.L. also repeatedly cites to craigslist charging for advertisements only in its erotic services/adult services subsection. Craigslist asserts that it began charging for postings in those sections to attempt to address the problem of human trafficking and prostitution. Dkt. 232 at 15 n.9 (parenthetically citing *craigslist v. McMaster*, No. 2:09-cv-01308-CWH, 2010 WL 11640195, at *2 (D.S.C. Aug. 6, 2010)). The same seems to be true for it changing the subcategory's name from "erotic services" to "adult services," removing the subcategory altogether, and creating rules and terms of use barring the use of particular terms and posts. *See* Dkt. 187 ¶¶ 3, 72; Dkt. 232 at 12. It seems clear from the origins of § 230, its plain language, and the case law interpreting it that the law was designed to protect internet service providers for taking actions to address unlawful or harmful activity, i.e., acting as "good Samaritans." Holding craigslist's efforts to address the problem of sex trafficking against it would be directly contrary to Congress's original intent in passing § 230.

1    The Northern District of California reached the same conclusion in a similar case

2    to this one, *J.B. v. G6 Hospitality, LLC¸* No. 19-cv-7848-HSG, 2020 WL 4901196 (N.D.

3    Cal. Aug. 20, 2020).[16] There, faced with almost identical facts, the court held that

4    craigslist was entitled to § 230 immunity because craigslist only acted as a publisher by

5    providing subsections titled "adult services" or "erotic services" and by failing to verify

6    the age of the person being advertised or the identity of the poster. *Id.* at *4, *7.

7    The Court agrees with the R&R that M.L.'s negligence and strict liability claims

8    against craigslist are barred by § 230 immunity. Therefore, M.L.'s objections are

9    OVERRULED, the R&R is ADOPTED as to M.L.'s negligence and strict liability

10   claims, craigslist's motion to dismiss those claims is GRANTED, and those claims are

11   DISMISSED with prejudice.

12   **c.    Leave to Amend**

13   M.L. alternatively seeks leave to amend her complaint to plausibly plead her

14   negligence and strict liability claims. Dkt. 233 at 14. Leave to amend a complaint under

15   Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v.*

16   *Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Foman v. Davis*, 371

17   U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence*

18   *Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In

19   determining whether to grant leave under Rule 15, courts consider five factors: "bad

20

21   [16] This case is currently on interlocutory appeal with the Ninth Circuit regarding whether internet companies enjoy § 230 immunity for TVPRA claims if the company's conduct does not amount to a violation of the TVPRA's criminal provision. *See J.B. v. G6 Hospitality, LLC*, 19-

22   cv-07848-HSG, 2021 WL 6621068 (N.D. Cal. Dec. 16, 2021).

faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.,* 316 F.3d at 1052. A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing, *inter alia*, *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

If granted, this would be M.L.'s third amended complaint, and her fourth attempt at plausibly pleading her negligence claim against craigslist. *See* Dkts. 1 (First Amended Complaint), 187 (Second Amended Complaint). This case is years old, craigslist has filed multiple dispositive motions, and no set of facts has yet been presented that would suggest craigslist is not entitled to § 230 immunity as to M.L.'s negligence and strict liability claims. Amendment would be futile and would prejudice craigslist at this juncture. M.L.'s motion for leave to amend her complaint is therefore DENIED.

### 3.    Criminal Profiteering Act

The R&R recommends that the Court dismiss M.L.'s CPA claims based on Trafficking, Use of Proceeds of Criminal Profiteering, and Sexual Exploitation of a Minor for failure to state a claim. It also recommends dismissing M.L.'s CPA claims

1    based on Promoting Commercial Sexual Abuse of a Minor, Leading Organized Crime,[17]

2    Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct, and

3    Sending/Bringing into State Depictions of Minor Engaged in Sexually Explicit Conduct

4    as barred by the CDA. Dkt. 225 at 2. The R&R also recommends that the Court refuse to

5    dismiss M.L.'s CPA claims based on Promoting Prostitution in the First Degree and

6    Promoting Prostitution in the Second Degree. *Id.* at 19–23.

7         M.L. objects to the R&R's recommendation to dismiss her CPA claim based on

8    Leading Organized Crime, arguing that she alleged sufficient facts to suggest that

9    craigslist led and profited from an organized criminal enterprise involving three or more

10   persons and three or more felonious acts. Dkt. 233 at 14–15. Craigslist argues that the

11   claim should be dismissed based on § 230 immunity. Dkt. 234.

12        Craigslist objects to the R&R's recommendation to deny its motion to dismiss on

13   M.L.'s CPA claims based on Promoting Prostitution in the First and Second Degrees,

14   arguing that it is immune under § 230 and that it did not knowingly advance or profit

15   from M.L.'s prostitution. Dkt. 232. Neither party objected to the dismissal of the

16   remaining CPA claims, and therefore those claims against craigslist are DISMISSED

17   without prejudice.

18        The Washington Criminal Profiteering Act creates a private right of action for any

19   person who sustains injury "by an act of criminal profiteering that is part of a pattern of

20   criminal profiteering activity" or by an enumerated offense. RCW 9A.82.100(1)(a).

21   _____

22   [17] M.L. also asserted a standalone Leading Organized Crime claim (claim 5), which is also based on a CPA cause of action.

1    "'Pattern of criminal profiteering activity' means engaging in at least three acts of

2    criminal profiteering" within five years. RCW 9A.82.010(12). Acts of criminal

3    profiteering include, *inter alia*, Leading Organized Crime (RCW 9A.82.060), Promoting

4    Prostitution in the First or Second Degree (RCW 9A.88.070–.080), Promoting

5    Commercial Sexual Abuse of a Minor (RCW 9.68A.101), and Trafficking (RCW

6    9A.40.100). The specifically enumerated offenses that implicate CPA liability are

7    Trafficking (RCW 9A.41.100), Commercial Sexual Abuse of a Minor (RCW 9.68A.100),

8    Promoting Commercial Sexual Abuse of a Minor (RCW 9.68A.101), Promoting

9    Prostitution in the First Degree (RCW 9A.88.070), Leading Organized Crime (RCW

10   9A.82.060), and Use of Proceeds of Criminal Profiteering (RCW 9A.82.080).

11         **a.    Promoting Prostitution in the First Degree**

12         The R&R recommends denying craigslist's motion to dismiss for M.L.'s CPA

13   claims based on Promoting Prostitution in the First Degree only for conduct occurring

14   prior to May 8, 2007—when the Washington legislature amended the statute.[18] Craigslist

15   objects to the recommendation that the pre-May 8, 2007 claims survive. Dkt. 232.

16   Craigslist argues that M.L. did not plausibly allege that craigslist "had actual knowledge

17   that it caused or aided Plaintiff's prostitution activity *or* participated in the proceeds of

18   Plaintiff's prostitution activity" or "had actual knowledge that Plaintiff was less than

19   eighteen years old." *Id.* at 13. Specifically, craigslist asserts that M.L. does not plausibly

20

21         [18] The R&R sets this date as May 8, 2007 because that is the date on which the statute
     was amended. As craigslist points out, while the statute was amended on May 8, the effective
22   date of that amendment was July 22, 2007.

1   allege that craigslist had actual knowledge about her posts or her age, rather she only

2   alleges craigslist had general knowledge that its site was being used to facilitate child sex

3   trafficking. Craigslist also argues that M.L. failed to plausibly allege that it profited from

4   prostitution under RCW 9A.88.070(1) because she does not allege that craigslist agreed

5   to share in the profits from M.L.'s prostitution and because craigslist did not charge a fee

6   for postings in its erotic services subcategory until 2008. Dkt. 232 at 15–16 & n.9.

7        M.L. argues that her claims should not be limited to those for conduct prior to

8   May 8, 2007 because the statute requires only that she was trafficked by way of threat or

9   force and that craigslist profited from her prostitution. Dkt. 237 at 14. In other words, she

10  argues that craigslist did not have to threaten or force M.L. to engage in prostitution nor

11  did it have to know that her prostitution was compelled by threat or force to be liable

12  under the statute. *Id.*

13       A person only "profits from prostitution" if "he or she accepts or receives money

14  or anything of value *pursuant to an agreement or understanding* with any person

15  whereby he or she participates or is to participate in the proceeds of prostitution activity."

16  RCW 9A.88.060(2) (emphasis added). "[P]roof of an informal agreement is sufficient to

17  establish" an "understanding" under the definition of profiting from prostitution. *State v.*

18  *Yancy*, 92 Wn.2d 153, 157 (1979) (en banc). But if the source of the money is immaterial

19  to the agreement or understanding, the person is not "profiting from prostitution." *Id.*

20       In her operative complaint, M.L. alleges repeatedly that craigslist was generally

21  aware that its website was being used to facilitate sex trafficking. *See, e.g.*, Dkt. 187,

22  ¶¶ 2, 49, 50, 61, 68, 70. In fact, craigslist admits itself that it started charging a fee for

advertisements in its "erotic services" section to address the issue of sex trafficking,

effectively conceding its awareness. Dkt. 232 at 15 n.9. M.L. also alleges that her

trafficker had to pay craigslist a fee to advertise her on the website suggesting that

craigslist must have had knowledge of her advertisements. Dkt. 187 at 22. While a

reasonable factfinder could conclude that M.L.'s trafficker and craigslist had an

"agreement or understanding," and that M.L.'s trafficker paid craigslist with the proceeds

of her prostitution, there are no facts to suggest that M.L.'s trafficking was part of that

agreement. *Cf. State v. Columbus*, 74 Wash. 290, 295–97 (1913) (explaining that renting

out a room paid for by the profits of prostitution would not be enough to constitute

"accepting the earnings of a prostitute," but receiving a fee on top of the room rate for the

prostitution was sufficient).

 M.L. does not plausibly allege that craigslist accepted money pursuant to an

agreement to participate in M.L.'s trafficking, and it thus cannot be held liable for

Promoting Prostitution in the First Degree. Therefore, the R&R is REJECTED as to

M.L.'s CPA claim on the basis of Promoting Prostitution in the First Degree, craigslist's

motion to dismiss that claim is GRANTED, and it is DISMISSED with prejudice.

 **b.** **Promoting Prostitution in the Second Degree**

 The R&R recommends that the Court deny craigslist's motion to dismiss M.L.'s

CPA claims based on Promoting Prostitution in the Second Degree because M.L.

plausibly alleged that craigslist knowingly profited from her prostitution and advanced

her prostitution. Dkt. 225 at 22–23. Craigslist argues that M.L. failed to allege facts that

craigslist knowingly agreed to share in the profits from M.L.'s prostitution or knowingly

1  aided or facilitated an act or enterprise of prostitution involving M.L. Dkt. 232 at 16.

2  Again, craigslist specifically asserts that it had no actual knowledge of M.L.'s

3  prostitution whatsoever. *Id.*

4  "A person is guilty of promoting prostitution in the second degree if he or she

5  knowingly: (a) [p]rofits from prostitution; or (b) [a]dvances prostitution." RCW

6  9A.88.080(1). A person "advances prostitution" by, *inter alia*, "caus[ing] or aid[ing] a

7  person to commit or engage in prostitution" or engaging in any "conduct designed to

8  institute, aid, or facilitate an act or enterprise of prostitution." RCW 9A.88.060(1). An

9  agreement is not required. *State v. Cann*, 92 Wn.2d 193, 198 (1979) (en banc),

10  *superseded on other grounds by* RCW 50.36.010.

11  M.L has plausibly alleged that craigslist knowingly caused or aided a person to

12  engage in prostitution or engaged in conduct "designed to institute, aid, or facilitate an act

13  or enterprise of prostitution." RCW 9A.88.060(1). It is largely undisputed that craigslist

14  was generally aware its website was being used to facilitate sex trafficking. Therefore,

15  craigslist's objections on that claim are OVERRULED, the R&R is ADOPTED as to

16  M.L.'s CPA claim based on Promoting Prostitution in the Second Degree, and craigslist's

17  motion to dismiss that claim is DENIED.

18  **4.      Leading Organized Crime**

19  The R&R recommends dismissing M.L.'s leading organized crime claim under

20  § 230 of the CDA. Dkt. 225 at 24–26. M.L. renews the same objections for her other

21  claims that the R&R recommends dismissing under § 230, specifically that craigslist is a

22

1  content creator or developer and that it "actively encouraged and facilitated the posting of

2  illegal content on their 'erotic services' website." Dkt. 233 at 15.

3      For the same reasons discussed in the R&R and above regarding § 230, M.L.'s

4  leading organized crime claims—both the CPA claim and the standalone claim—are

5  barred by § 230 immunity. M.L.'s objections on those claims are OVERRULED, the

6  R&R is ADOPTED as to those claims, and those claims are DISMISSED with prejudice.

7                              **IV.  ORDER**

8      The Court having considered the R&R, Plaintiff's objections, and the remaining

9  record, does hereby find and order as follows:

10     (1)   The R&R on the parties' motions for summary judgment, Dkt. 223, is

11           **ADOPTED**;

12     (2)   The R&R on craigslist's motion to dismiss, Dkt. 225, is **ADOPTED in**

13           **part and REVERSED in part**;

14     (3)   Defendant 2005 Investors LLC's Motion for Partial Summary Judgment,

15           Dkt. 179, is **GRANTED in part and DENIED in part**;

16     (4)   Defendant craigslist, Inc.'s Motion for Partial Summary Judgment, Dkt.

17           180, is **GRANTED in part and DENIED in part**; and

18     (5)   Defendant craigslist, Inc.'s Motion to Dismiss, Dkt. 200, is **GRANTED in**

19           **part and DENIED in part**;

20     (6)   M.L.'s Motion to Strike craigslist's reference to the DSM-V, Dkt. 223, is

21           **GRANTED**;

22

1      (7)   M.L.'s Motion to Strike craigslist's response to her notice of supplemental

2              authority, Dkt. 242, is **GRANTED**;

3      (8)   craigslist's reference to the DSM-V, craigslist's response to M.L.'s notice

4              of supplemental authority, and M.L.'s argument contained in her notices of

5              supplemental authority are **STRICKEN**;

6      (9)   The following claims are **DISMISSED with prejudice**:

7            a.  M.L.'s financial beneficiary claims based on the TVPRA for conduct

8                prior to December 23, 2008;

9            b.  M.L.'s claim for attorney fees and costs under SECA after ██████

10                ████████;

11            c.  M.L.'s claims against 2005 Investors for conduct occurring at the

12                Howard Johnson after August 31, 2015;

13            d.  M.L.'s CPA claims against craigslist to the extent they are based on

14                Trafficking, Promoting Commercial Sexual Abuse of a Minor, Use of

15                Proceeds of Criminal Profiteering, Sexual Exploitation of a Minor,

16                Dealing in Depictions of Minors Engaged in Sexually Explicit Conduct,

17                Sending/Bringing into State Depiction of Minor Engaged in Sexually

18                Explicit Conduct, Promoting Prostitution in the First Degree, or Leading

19                Organized Crime;

20            e.  M.L.'s negligence and strict liability claims against craigslist; and

21     \\

22     \\

(10)   M.L.'s motion for leave to amend her negligence and strict liability claims

is **DENIED**.

Dated this 25th day of April, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge